**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STEPHEN SKERTICH<br> and<br>CYNTHIA SKERTICH,<br><br> Plaintiffs,<br><br>v.<br><br>NEWREZ LLC, d/b/a SHELLPOINT<br>MORTGAGE SERVICING<br> and<br>ALLIANT CREDIT UNION,<br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **CIVIL ACTION NO.**<br>2:24-CV-6809<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## PRELIMINARY STATEMENT

1.      This is an action for damages brought by individual consumers, Stephen Skertich and Cynthia Skertich, (collectively "Plaintiffs") against Newrez LLC, d/b/a Shellpoint Mortgage Servicing and Alliant Credit Union (collectively "Defendants") for violations of the Truth in Lending Act ("TILA") and the regulations issued pursuant to that statute ("Regulation Z"), the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), the Fair Extension Uniformity Act ("FCEUA"), the Uniform Commercial Code, Article 4A, Funds Transfers ("Article 4A"), 13 Pa.C.S.A. PA ST D. 4a, the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), FL ST §§ 501.201, *et seq.*, the Uniform Commercial Code—Funds Transfers ("Chapter 670"), FL ST T. XXXIX, Ch. 670, and common law conversion and negligence.

## JURISDICTION AND VENUE

2.      Jurisdiction of this Court arises under 15 U.S.C. § 1681p, 28 U.S.C. § 1331 and 28 U.S.C. § 1337.

3.      Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

4.      Plaintiff Stephen Skertich is an adult individual residing in Lakewood Ranch, Florida.

5.      Plaintiff Cynthia Skertich is an adult individual resident in Lakewood Ranch, Florida.

6.      Defendant Newrez LLC, d/b/a Shellpoint Mortgage Servicing ("Shellpoint") is a business entity that regularly conducts business in the Eastern District of Pennsylvania, and which has a principal place of business located at 601 Office Ctr Dr, Ste. 100, Fort Washington, PA 19034.

7.      Defendant Alliant Credit Union ("Alliant") is a business entity that regularly conducts business in the Eastern District of Pennsylvania, and which has a principal place of business located at 11545 W. Touhy Ave, Chicago, IL 60666.

## FACTUAL ALLEGATIONS

8.      Plaintiffs are a husband and wife who have an open $500,000.00 home equity line of credit account (hereafter "HELOC") secured by their primary residence.

9.      The HELOC is used primarily for personal, family, and household purposes.

10.     The HELOC is serviced by Shellpoint, which was formerly referred to as Specialized Loan Servicing ("SLS").

11.     The HELOC is owned by Alliant.

2

12.    From May 2, 2024, to July 11, 2024, SLS underwent a "transformation" in which the mortgage servicer became known as Newrez LLC, d/b/a Shellpoint Mortgage Servicing.

13.    During this period, Plaintiffs received no billing statements from Shellpoint as a result of the "transformation".

14.    On June 5, 2024, an unknown third party submitted a fraudulent and obviously counterfeit HELOC Wire Request Form through Shellpoint's established systems.

15.    The unknown third party filled out the form using Plaintiffs' personal information and requested that the wire be drawn on Plaintiffs' HELOC.

16.    The fraudulent wire form included numerous red flags, including, but not limited to, an obviously counterfeit "copy" of Plaintiffs' driver's license that did not match the drivers' licenses that Defendants had on file for Plaintiffs, a signature that did not match either Plaintiff, and upon information and belief, was transmitted to Defendants from an IP address that clearly had no connection to Plaintiffs.

17.    The form listed the Wire Transfer Amount as $425,650.

18.    The form listed the receiving bank as a CitiBank located in Crystal Lake, Illinois.

19.    Plaintiffs have never placed a similar request to Shellpoint since the creation of Plaintiffs' HELOC.

20.    In response to the fraudulent HELOC Wire Request Form, a fraudulent wire transfer was performed which took $425,650 from Plaintiffs HELOC and transferred it to the CitiBank in Crystal Lake, Illinois (the "Wire Transfer").

21.    Plaintiffs did not authorize the Wire Transfer.

22.    Plaintiffs did not benefit from the Wire Transfer.

23.    Despite the clearly fraudulent and counterfeit wire form, and Shellpoint's representations to Plaintiffs that it can detect fraudulent activity relating to Plaintiffs' financial

decisions and the HELOC, Shellpoint took no steps to stop the Wire Transfer as fraudulent and allowed it to be processed.

24.     In August 2024, Plaintiffs received their first billing statement from Shellpoint since the time that it stopped doing business as SLS.

25.     The billing statement, dated July 9, 2024 (received on August 9, 2024), reflected a new balance of $425,650.00 on Plaintiffs' HELOC.

26.     Plaintiffs immediately called Shellpoint on August 9, 2024, to dispute the balance and to inform it that the balance should be $0.

27.     Plaintiffs also made additional dispute calls to Shellpoint on August 15, 2024, and August 16, 2024.

28.     On or about August 16, 2024, Shellpoint provided Plaintiffs with the HELOC Wire Request Form used to initiate the Wire Transfer, which includes a signature that does not match either of the Plaintiffs' signatures.

29.     Plaintiffs continued to make several calls to Shellpoint reporting the fraudulent activity.

30.     Plaintiffs also sent a dispute by mail on August 19, 2024, alerting Shellpoint of the fraudulent activity yet again.

31.     On or about August 21, 2024, Plaintiffs filed a police report alerting the authorities of the identity theft and the fraudulent Wire Transfer.

32.     Plaintiffs followed up with Shellpoint by resending their prior letter by certified mail on August 28, 2024, continuing to dispute the Wire Transfer.

33.     Despite Plaintiffs reporting the fraudulent Wire Transfer and identity theft to both Shellpoint as well as the police, Shellpoint has continued to tell Plaintiffs that they are liable for the fraudulent Wire Transfer on their HELOC.

34.    Shellpoint has subsequently charged interest on Plaintiffs' HELOC account, elevating the balance for each month that it has been wrongfully charged to Plaintiffs.

35.    Shellpoint has sent Plaintiffs correspondence asserting that their loan is delinquent despite being repeatedly informed that it is the result of fraudulent activity.

36.    Shellpoint has continued its attempts to collect from Plaintiffs the funds related to the fraudulent Wire Transfer.

37.    Shellpoint has threatened to, and started the process of, foreclosing on Plaintiffs' home in an attempt to coerce and harass Plaintiffs into paying back the funds that were the subject of the fraudulent Wire Transfer.

38.    In or around September 2024, Plaintiffs requested their credit reports from the major credit reporting agencies ("CRAs").

39.    Shellpoint furnished the incorrect and fraudulent balance from the HELOC to the CRAs, and the CRAs are and have been reporting the incorrect and fraudulent balance since at least September 2024.

40.    In or around October 2024, Plaintiffs sent correspondence to the CRAs disputing the fraudulent balance with evidence that the balance was not a result of their own actions.

41.    In response to these disputes, the CRAs relayed the disputes to Shellpoint, and Defendant wrongfully verified the balance as accurate.

42.    Additionally, Shellpoint sent letters dated October 10, 2024, and October 25, 2024, stating its intention to continue holding Plaintiffs liable for the debt and acknowledging that it had received Plaintiffs' disputes.

43.    In a letter dated October 29, 2024, Defendants informed Plaintiffs that they were in default on their HELOC and were required to pay the monthly payments that were wrongfully charged to them to cure the default.

44.     Despite Plaintiffs continuously disputing the balance on their HELOC to Defendants with evidence that the balance was the result of fraudulent activity, Defendants have refused to reasonably investigate the accusations of fraudulent activity.

45.     Defendants have attempted to hold Plaintiffs liable for the balance that came about as a result of fraudulent activity and have attempted to accelerate the sums secured by the Security Instrument.

46.     Defendants have made numerous representations to Plaintiffs and the public at large that their electronic banking systems are secure.

47.     Defendants appear to not have had any commercially reasonable security systems in place to prevent the fraudulent Wire Transfer.

48.     As a result of Defendants' conduct, Plaintiffs have suffered significant financial damages, additional actual damages, and consequential damages.

49.     At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

50.     At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and the rights of the Plaintiffs herein.

## <u>COUNT I</u>
## TRUTH IN LENDING ACT ("TILA")

51.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

52.     Pursuant to 15 U.S.C. § 1640(a), Defendants are liable to Plaintiffs for engaging in the following conduct:

a.    advising Plaintiffs that they were responsible to pay the full amount of the unauthorized and fraudulent Wire Transfer from their account and billing them for the same in violation of 15 U.S.C. § 1643;

b.    demanding that Plaintiffs make payments for the interest on the full amount of the unauthorized and fraudulent Wire Transfer from their account in violation of 12 C.F.R. § 226.13(d)(1);

c.    attempting to collect from Plaintiffs any portion, or interest thereon, of the funds that were fraudulently transferred from Plaintiffs' account in violation of 12 C.F.R. § 226.13(d)(1);

d.    failing to reasonably investigate and correct the unauthorized and fraudulent Wire Transfer from Plaintiffs' account in violation of 15 U.S.C. § 1666;

e.    reporting Plaintiffs to the CRAs as owing money and being delinquent in payments on their HELOC when Defendants knew that the Wire Transfer was unauthorized and fraudulent and that the Plaintiffs had disputed the valance in violation of 15 U.S.C. § 1666a and 12 C.F.R. § 226.13(d)(2); and

f.    continuing to report Plaintiffs as owing money and being delinquent in their payments on their HELOC after Plaintiffs additionally disputed the inaccurate information with the CRAs when Defendants knew that the transfer was unauthorized and fraudulent and that the Plaintiffs had disputed the balance in violation of 15 U.S.C. § 1666a.

53.    Defendants' conduct was a direct and proximate cause, as well as a substantial factor, in causing the serious injuries, damages and harm to the Plaintiff that are outlined more fully above, and as a result Defendants are liable to compensate Plaintiff for the full amount of statutory, actual and punitive damages, along with attorney's fees and costs, as well as such other relief, permitted by law.

**COUNT II**
**FAIR CREDIT REPORTING ACT ("FCRA")**

54.    Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

55.    At all times pertinent hereto, Defendants were each a "person" as that term is defined by 15 U.S.C. § 1681a(b).

56.    At all times pertinent hereto, Defendants were each a "furnisher" of credit information as defined by the FCRA.

57.    Defendants violated sections 1681n and 1681o of the FCRA by willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. §1681s-2(b).

58.    Defendants' conduct was a direct and proximate cause, as well as a substantial factor, in causing the serious injuries, damages and harm to the Plaintiff that are outlined more fully above, and as a result Defendants are liable to compensate Plaintiff for the full amount of statutory, actual and punitive damages, along with attorney's fees and costs, as well as such other relief, permitted by law.

**COUNT III**
**PENNSYLVANIA UNFAIR TRADE PRACTICES AND**
**CONSUMER PROTECTION LAW ("UTPCPL")**

59.    Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

60.    Defendants are each a "person" as that term is defined by 73 Pa. Stat. § 201-2(2)3.

61.    Plaintiffs are each a "person" as that term is used in 73 Pa. Stat. § 201-2(2).

62.    Plaintiffs opened their HELOC and signed a customer agreement with Defendants for personal purposes as that term is used in 73 Pa. Stat. § 201-9.2.

63.    Defendants' actions described above were "trade" and "commerce" as those terms are defined by 73 Pa. Stat. § 201-2(3).

64.     As detailed above, Defendants engaged in "unfair or deceptive acts or practices" as is defined by 73 Pa. Stat. § 201-2(4).

65.     Defendants, by their acts or omissions described herein, made materially false, misleading oral or written statements or other representations, directly and indirectly through authorized agents and employees, including but not limited to the following:

a.  failing to have in place procedures to prevent clearly fraudulent wire transfers;

b.  failing to expeditiously investigate and stop reportedly fraudulent wire transfers;

c.  making false representations about the security of its loan servicing;

d.  allowing fraudulent transfers to be made from Plaintiffs' HELOC to an unauthorized third party; and

e.  imposing the cost of the fraudulent Wire Transfer on Plaintiffs.

66.     Defendants' acts and omissions detailed herein violate 73 Pa. Stat. § 201-3(a).

67.     Plaintiffs suffered an ascertainable loss of money by the fraudulent transfers and transactions made by an unauthorized third party as described herein.

68.     As a mortgage servicer and a credit union, Defendants knew or should have known prior to entering into an agreement with Plaintiffs the laws governing their relationship with Plaintiffs.

69.     The routine business practices of Defendants, subject to this claim, disregarded the laws governing their relationship with Plaintiffs.

70.     No reasonable person would assume that institutions like Defendants would violate the laws governing their activities.

71.     Plaintiffs justifiably relied on Defendants' acts and omissions by believing that they would take swift action in response to transfers that they knew or should have known to be fraudulent, and Plaintiffs continued to follow Defendants established dispute procedures as further evidence of that reasonable reliance.

72.     As a result, Plaintiffs have suffered significant harm, including financial, actual, and compensatory harm, along with the ascertainable loss described above.

73.     As a result of the above violations of the UTPCPL, Plaintiffs have suffered ascertainable losses entitling Plaintiffs to an award of statutory, actual and treble damages and attorney's fees and costs.

## COUNT IV
## PENNSYLVANIA FAIR CREDIT EXTENSION UNIFORMITY ACT ("FCEUA")

74.     Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

75.     Defendants are "creditor[s]" as defined by 73 P.S. § 2271.3 of the FCEUA.

76.     Plaintiffs are each a "debtor" as defined by 73 P.S. § 2271.3 of the FCEUA.

77.     The above contacts by Defendants, and their agents, were "communications" relating to a "debt" as defined by 73 P.S. § 2271.3 of the FCEUA.

78.     Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices, as defined by the UTPCPL, by attempting to collect the debt in violation of the FCEUA.  Respondents' violations of the FCEUA and UTPCPL include, but are not limited to, violations of 73 P.S. § 2270.4(b), as evidenced by the following conduct:

   a.   engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt;

   b.   the false representation of the amount, character or legal status of a debt;

    c.   collecting any amount (including any interest, fee, charge or expense incidental to the principal obligation) which is not expressly authorized by an agreement creating the debt or permitted by law;

    d.   otherwise using false, deceptive or misleading and unfair or unconscionable means to collect or attempt to collect a debt; and

    e.   otherwise using false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect a debt.

79.    Defendants' acts as described above were done with intentional, willful, reckless, wanton and negligent disregard for Plaintiffs' rights under the law and with the purpose of coercing Plaintiffs to pay the debt.

80.    As a result of the above violations of the FCEUA, Plaintiffs have suffered ascertainable losses entitling Plaintiffs to an award of statutory, actual and treble damages and attorney's fees and costs.

### COUNT V
### UNIFORM COMMERCIAL CODE, ARTICLE 4A,
### FUNDS TRANSFERS ("ARTICLE 4A")

81.    Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

82.    Plaintiffs are each a "customer" as that term is defined in 13 Pa.C.S.A. § 4A105(a).

83.    Shellpoint is a "receiving bank" as that term is defined in 13 Pa.C.S.A. § 4A103(a)(4).

84.    The Wire Transfer is a "payment order" as that term is defined in 13 Pa.C.S.A. § 4A103(a)(1).

85.    Shellpoint had a duty under 13 Pa.C.S.A. §§ 4A202 and 203 to transfer Plaintiffs' funds solely subject to an authorized payment order.

86.     Shellpoint allowed an unauthorized payment order to be made from Plaintiffs' HELOC when it processed the Wire Transfer.

87.     Shellpoint violated the provisions of Article 4A when it processed the Wire Transfer.

88.     Shellpoint also had a duty under 13 Pa.C.S.A. § 4A202(c) to use commercially reasonable security procedures for payment orders issued by customers.

89.     The Wire Transfer was extremely unusual and suspicious in light of Plaintiffs' history using their HELOC.

90.     Shellpoint violated the provisions of Article 4A by failing to have a commercially reasonable security procedure to prevent the Wire Transfer.

91.     Pursuant to 13 Pa.C.S.A. § 4A204, Shellpoint has a duty to refund payments made through unauthorized payment orders.

92.     Given the foregoing, Plaintiffs are entitled to the $425,650.00 stolen by way of the Wire Transfer together with interest at the highest rate allowed by law from June 5, 2024, and costs.

## COUNT VI
## FLORIDA DECEPTIVE AND UNFAIR
## TRADE PRACTICES ACT ("FDUTPA")

93.     Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

94.     Plaintiffs are each a "consumer" and an "interested party or person" as those terms are defined by FL ST § 501.203.

95.     Defendants' actions described above were "trade" and "commerce" as those terms are defined by FL ST § 501.203.

96.     As detailed above, Defendants engaged in "unfair or deceptive acts or practices as that terms is used in FL ST § 501.204.

97.     Defendants, by their acts or omissions described herein, made materially false, misleading oral or written statements or other representations, directly and indirectly through authorized agents and employees, including but not limited to the following:

     a.  failing to have in place procedures to prevent clearly fraudulent wire transfers;

     b.  failing to expeditiously investigate and stop reportedly fraudulent wire transfers;

     c.  making false representations about the security of its loan servicing;

     d.  allowing fraudulent transfers to be made from Plaintiffs' HELOC to an unauthorized third party; and

     e.  imposing the cost of the fraudulent Wire Transfer on Plaintiffs.

98.     Defendants' acts and omissions detailed herein violate FL ST § 501.204.

99.     Plaintiffs suffered an ascertainable loss of money by the fraudulent transfers and transactions made by an unauthorized third party as described herein.

100.    As a mortgage servicer and a credit union, Defendants knew or should have known prior to entering into an agreement with Plaintiffs the laws governing their relationship with Plaintiffs.

101.    The routine business practices of Defendants, subject to this claim, disregarded the laws governing their relationship with Plaintiffs.

102.    No reasonable person would assume that institutions like Defendants would violate the laws governing their activities.

103.    Plaintiffs justifiably relied on Defendants' acts and omissions by believing that they would take swift action in response to transfers that they knew or should have known to be fraudulent, and Plaintiffs continued to follow Defendants established dispute procedures as further evidence of that reasonable reliance.

104.    As a result, Plaintiffs have suffered significant harm, including financial, actual, and compensatory harm, along with the ascertainable loss described above.

105.    As a result of the above violations of the FDUTPA, Plaintiffs have suffered ascertainable losses entitling Plaintiffs to an award of statutory, actual and treble damages and attorney's fees and costs pursuant to FL ST § 501.2105.

<u>**COUNT VII**</u>
**UNIFORM COMMERCIAL CODE—FUNDS TRANSFERS**
**("CHAPTER 670")**

106.    Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

107.    Plaintiffs are each a "customer" as that term is defined in FL ST § 670.105.

108.    Shellpoint is a "receiving bank" as that term is defined in FL ST § 670.103.

109.    The Wire Transfer is a "payment order" as that term is defined in FL ST § 670.103.

110.    Shellpoint had a duty under FL ST §§ 670.202 and 670.203 to transfer Plaintiffs' funds solely subject to an authorized payment order.

111.    Shellpoint allowed an unauthorized payment order to be made from Plaintiffs' HELOC when it processed the Wire Transfer.

112.    Shellpoint violated the provisions of Chapter 670 when it processed the Wire Transfer.

113.    Shellpoint also had a duty under FL ST § 670.202(c) to use commercially reasonable security procedures for payment orders issued by customers.

114.    The Wire Transfer was extremely unusual and suspicious in light of Plaintiffs' history using their HELOC.

115.    Shellpoint violated the provisions of Chapter 670 by failing to have a commercially reasonable security procedure to prevent the Wire Transfer.

116.    Pursuant to FL ST § 670.204, Shellpoint has a duty to refund payments made through unauthorized payment orders.

117.    Given the foregoing, Plaintiffs are entitled to the $425,650.00 stolen by way of the Wire Transfer together with interest at the highest rate allowed by law from June 5, 2024, and costs.

**COUNT VIII**
**CONVERSION**

118.    Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

119.    Plaintiffs had a right to possession of the funds that belonged to them through their HELOC.

120.    Defendants, through their actions detailed above, have interfered with and deprived Plaintiffs of their right to possess their property.

121.    Defendants did not have consent to interfere with Plaintiffs' right of possession.

122.    Defendants had no lawful justification in interfering with Plaintiffs' right of possession.

123.    Defendants' actions in interfering with Plaintiffs' right of possession were willful, malicious, and indicative of a wanton disregard for Plaintiffs' rights.

124.    As a result, Defendants are liable to Plaintiffs for the full amount of actual damages and punitive damages.

**COUNT IX**
**NEGLIGENCE**

125.    Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

126.    Defendants owed Plaintiffs a duty to protect Plaintiffs' HELOC from fraudulent activity.

127.    Defendants are liable to Plaintiffs for damages caused by their breach of their duty to protect Plaintiffs' HELOC from fraudulent activity.

128.    Defendants breached their duty by allowing the fraudulent activity to occur without intervention.

129.    As a direct and proximate result of Defendants' breach of their duty to Plaintiffs, Defendants are liable to Plaintiffs for the full amount of actual damages and punitive damages.

## JURY TRIAL DEMANDED

130.    Plaintiffs demand trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs seek judgment in Plaintiffs' favor and damages against the

Defendants, based on the following requested relief:

      (a) All actual damages caused by Defendants' acts and omissions;

      (b) All compensatory damages caused by Defendants' acts and omissions;

      (c) Treble damages;

      (d) Punitive damages;

      (e) Reasonable attorneys' fees and costs;

      (f) Interest; and

      (g) Such other relief that the court finds just and proper.


BY:    */s/ Mark D. Mailman*
          Mark D. Mailman, esq.
          Joseph L. Gentilcore, Esq.
          FRANCIS MAILMAN SOUMILAS, P.C.
          1600 Market Street, Suite 2510
          Philadelphia, PA 19103
          T: 215-735-8600
          F: 215-940-8000
Dated:  December 20, 2024    *Attorneys for Plaintiff*