# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHEN SKERTICH and CYNTHIA SKERTICH, | Civil Action No.: 2:24-cv-06809-PD |
|     Plaintiffs, | |
| v. | |
| NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING and ALLIANT CREDIT UNION, | |
|     Defendants. | |

---

## MEMORANDUM OF LAW IN SUPPORT OF
## NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING'S
## MOTION FOR SUMMARY JUDGMENT

---

Jeffrey Stacko, Esq.
DINSMORE & SHOHL LLP
6 PPG Place, Suite 1300
Pittsburgh, PA 15222
412.281.5000 (t)
412.281.5055 (f)

*Counsel for Defendants*
*Newrez LLC d/b/a Shellpoint*
*Mortgage Servicing and Alliant Credit*
*Union*

**<u>TABLE OF CONTENTS</u>**

INTRODUCTION ...................................................................................1

PROPOSED STATEMENT OF UNDISPUTED FACTS RELEVANT TO
MOTION FOR SUMMARY JUDGMENT ..............................................2

ARGUMENT .........................................................................................5

    A.    Plaintiffs Cannot Avoid Summary Judgment With Conclusory
         Allegations And Mere Speculation .......................................5

    B.    Plaintiffs' TILA Claim Fails Because Shellpoint Is A Mortgage
         Servicer.................................................................................6

    C.    Plaintiffs' UTPCPL Claim Fails Because Plaintiffs Did Not
         Justifiably Rely Upon Any Action Of Shellpoint In The
         Formation Of The Loan..........................................................7

    D.    Count IV Of Plaintiffs' Complaint Fails Because Plaintiffs' Loan
         Obligation Is Not A "Debt" As Defined By The FCEUA ...................9

    E.    Count VI Of Plaintiffs' Complaint Should Be Dismissed
         Because Shellpoint's Conduct Is Not "Trade Or Commerce"
         Governed By The FDUTPA.................................................10

    F.    Counts VIII And IX Of Plaintiffs' Complaint Should Be
         Dismissed Because They Are Barred By Pennsylvania's Gist Of
         The Action Doctrine..........................................................13

         i.    The Gist Of The Action Doctrine ............................13

         ii.    The Gist Of The Action Doctrine Bars Plaintiffs'
            Conversion Claim .................................................14

         iii.    The Gist Of The Action Doctrine Bars Plaintiffs'
            Negligence Claim..................................................16

    G.    Count IX Of Plaintiffs' Complaint Should Be Dismissed
         Because It Is Barred By Pennsylvania's Economic Loss Doctrine

..........................................................................................17

    H.    Counts VIII And IX Of Plaintiffs' Complaint Should Be Dismissed Because They Are Also Barred By Florida's Economic Loss Rule.............................................................18

CONCLUSION.......................................................................................19

COMPLAINT ............................................................. Appendix, Exhibit A

DECLARATION OF ANISSA MURPHY ............................... Appendix, Exhibit B

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Allen-Wright v. Allstate Ins. Co.,*
    2008 U.S. Dist. LEXIS 103272 (E.D. Pa. Dec. 19, 2008)...................................8

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)...........................................................................5

*Barnes v. Carrington Mortg. Servs., LLC,*
    2016 U.S. Dist. LEXIS 68718 (D. N. J. May 24, 2016)....................................7

*Bengal Converting Servs., Inc. v. Dual Printing, Inc.,*
    2012 WL 831965 (E.D. Pa. Mar. 13, 2012).......................................................16

*Benjamin v. CitiMortgage, Inc.,*
    2013 WL 1891284 (S.D. Fla. May 6, 2013).......................................................11

*Blake v. Seterus, Inc.,*
    2017 WL 543223 (S.D. Fla. Feb. 9, 2017)........................................................12

*Burdick v. Bank of Am., N.A.,*
    99 F. Supp. 3d 1372 (S.D. Fla. 2015)..............................................................18

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)...........................................................................5

*Clark v. HSBC Bank USA, Nat'l Ass'n,*
    664 F. App'x 810 (11th Cir. 2016)..................................................................12

*Fenton v. Balick,*
    821 F. Supp. 2d 755 (E.D. Pa. Nov. 3, 2011)...................................................14

*G.S. Carpentry, Inc. v. Markel Corp.,*
    2023 U.S. Dist. LEXIS 131751 (E.D. Pa. July 31, 2023)...................................9

*Hartman v. Deutsche Bank Nat'l Tr. Co.,*
    2008 U.S. Dist. LEXIS 59136 (E.D. Pa. Aug. 1, 2008).......................................7

*Jones v. ABN Amro Mortgage Group. Inc.,*
    551 F. Supp. 2d 400 (E.D. Pa. 2008) ..................................................................17

*Kornea v. Fannie Mae,*
    2020 U.S. Dist. LEXIS 18405 (E.D. Pa. Oct. 6, 2020) ........................................7

*Lucien v. Fed. Nat'l Mortg. Assoc.,*
    21 F. Supp. 3d 1379 (S.D. Fla. 2014) ..................................................................7

*Marais v. Chase Home Fin. LLC,*
    736 F.3d 711 (6th Cir. 2013) ...............................................................................7

*Montgomery v. Fed. Ins. Co.,*
    836 F. Supp. 292 (E.D. Pa. 1993) .......................................................................16

*Nardolilli v. Bank of Am. Corp.,*
    2013 WL 12154541 (S.D. Fla. Dec. 6, 2013) ............................................11, 12

*Robertson v. Allied Signal, Inc.,*
    914 F.2d 360 (3d Cir. 1990.).................................................................................6

*Romero v. Allstate,*
    2017 U.S. Dist. LEXIS 31965 (E.D. Pa. Mar. 7, 2017).......................................9

*Rousseau v. Green Tree Servicing, LLC,*
    2015 U.S. Dist. LEXIS 181145 (S.D. Fla. 2015) ........................................18, 19

*Sarsfield v. Citimortgage, Inc.,*
    707 F. Supp. 2d 546 (M.D. Pa. 2010).........................................................17, 18

*Schoch v. First Fid. Bancorporation,*
    912 F.2d 654 (3d Cir. 1990).................................................................................6

*Sköld v. Galderma Labs., L.P.,*
    99 F. Supp. 3d 585 (E.D. Pa. Apr. 17, 2015).....................................................13

*Tiara Condominium Ass'n, Inc. v. Marsh & McLennan Co., Inc.,*
    110 So. 3d 399, 408 (Fla. 2013)..................................................................18, 19

*Universal Premium Acceptance Corp. v. York Bank & Trust Co.,*
  69 F.3d 695 (3d Cir. 1995)................................................................................14

*Vives v. Rodriguez,*
  849 F. Supp. 2d 507 (E.D. Pa. 2012) ..............................................................15

*Wen v. Willis,*
  117 F. Supp. 3d 673 (E.D. Pa. 2015) ......................................................13 – 16

*Williams v. Hilton Grp.,*
  93 Fed. Appx. 384 (3d Cir. 2004)....................................................................13

*Williams v. Nationwide Credit, Inc.,*
  890 F. Supp. 2d 1319 (S.D. Fla. 2012) ............................................................11

**STATE CASES**

*Bruno v. Erie Ins. Co.,*
  106 A.3d 48 (Pa. 2014) ....................................................................................13

*eToll, Inc. v. Elias/Savion Advert., Inc.,*
  811 A.2d 10 (Pa. Super. 2002)........................................................................14

*Gregg v. Ameriprise Fin., Inc.,*
  245 A.3d 637 (Pa. 2021) ................................................................................8, 9

*Strausser v. PRAMCO, III,*
  944 A.2d 761 (Pa. Super. 2008)................................................................16, 17

**FEDERAL STATUTES**

15 U.S.C. § 1640(a) ................................................................................................6

**STATE STATUTES**

Fla. Stat. § 501.203 ..........................................................................................11, 12

Fla. Stat. § 501.204 ..............................................................................................11

73 P.S. § 201-2........................................................................................................7

73 P.S. § 201-9.2 ................................................................................................8, 9

73 P.S. § 2270.3 ..................................................................................................10

## FEDERAL RULES OF CIVIL PROCEDURE

Rule 56 ..................................................................................................................5

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STEPHEN SKERTICH and CYNTHIA SKERTICH, | Civil Action No.: 2:24-cv-06809-PD |
| Plaintiffs, | |
| v. | |
| NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING and ALLIANT CREDIT UNION, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF THE PARTIAL MOTION
FOR SUMMARY JUDGMENT BY DEFENDANT NEWREZ LLC D/B/A
<u>SHELLPOINT MORTGAGE SERVICING</u>**

Defendant, Newrez LLC d/b/a Shellpoint Mortgage Servicing, by and through counsel, Jeffrey M. Stacko, Esq. and Dinsmore & Shohl LLP, hereby submits this Memorandum of Law (the "Memorandum") in support of its Partial Motion for Summary Judgment (the "Motion"), seeking dismissal of Counts I, III, IV, VI, VIII and IX of the Complaint filed by Plaintiffs Stephen Skertich and Cynthia Skertich ("Plaintiffs") pursuant to Federal Rule of Civil Procedure 56.

## I.    <u>INTRODUCTION</u>

On June 6, 2024, a fraudulent wire transfer request in the amount of $425,650 was submitted by an individual purporting to be Plaintiff Stephen Skertich.  Included with the submittal were state and federal identification documents purporting to be

those of Mr. Skertich. The wire request was, unfortunately, approved, and the corresponding wire transfer was drawn upon a line of credit held by Plaintiffs. At the time of the wire transfer was co-Defendant Alliant Credit Union.

Beginning in August 2024, Plaintiffs disputed the wire transfer with Defendant Shellpoint, the servicer of the applicable mortgage loan. The information provided by Plaintiffs concerning their disputes of the wire transfer proved to Shellpoint that the wire transfer was, indeed, fraudulent, and on December 18, 2024, the balance of the $425,650 transfer was zeroed out (i.e., Plaintiffs could drawn down on the $425,650 balance). To be clear, Plaintiffs *are not responsible* for the wire transfer, are not responsible for any interest or fees related to the fraudulent wire transfer, and as of December 18, 2024 the Plaintiffs had full access to their line of credit.

Plaintiffs proceeded by filing a nine count Complaint on December 20, 2024. Counts I, III, IV, VI, VIII and IX of Plaintiffs' Complaint should be dismissed with prejudice as to Shellpoint.

## II.   PROPOSED STATEMENT OF UNDISPUTED FACTS RELEVANT TO MOTION FOR SUMMARY JUDGMENT

1.      Plaintiffs are residents of Florida. Complaint, ¶¶ 4, 5.

2.      On December 28, 2021, Plaintiffs entered a Home Equity Line of Credit Agreement (the "Note") in the amount of $500,000 in favor of lender, Spring EQ, LLC. Complaint, ¶ 8; Declaration of Anissa Murphy, ¶ 9.

3.    The Note is secured by a mortgage (the "Mortgage") encumbering the property located at 6911 Devon Cove, Lakewood Ranch, Florida 34202 (the "Property").  Declaration of Anissa Murphy, ¶ 10.  (The Note, Mortgage and associated origination documents are collectively referred to hereafter by Shellpoint as the "Loan Documents", setting forth the terms of the "Mortgage Loan").

4.    The Mortgage Loan was initially serviced by Spring EQ.  Declaration of Anissa Murphy, ¶ 11.

5.    Specialized Loan Servicing, LLC ("Specialized") began servicing the Mortgage Loan effective January 27, 2022.  Complaint, ¶ 10; Declaration of Anissa Murphy, ¶¶ 5, 11.

6.    Specialized's servicing of the Mortgage Loan included, among other things, receiving and crediting payments made pursuant to the terms of the Mortgage Loan.  Declaration of Anissa Murphy, ¶¶ 5, 7.

7.    Specialized had no communications with Plaintiffs prior to or during the Mortgage Loan's origination and/or closing with respect to the Mortgage Loan. Declaration of Anissa Murphy, ¶ 12.

8.    On or about June 5, 2024, Specialized received a HELOC Wire Request Form in the amount of $425,650 in connection with the Mortgage Loan.  Declaration of Anissa Murphy, ¶ 13.

9.    Included with the submittal were state and federal identification documents purporting to be those of Mr. Skertich.  Declaration of Anissa Murphy, ¶ 14.

10.    In response to Specialized's receipt of the Wire Request Form, a wire transfer in the amount of $425,650 was made to CitiBank (the "Wire Transfer"). Complaint, ¶ 20; Declaration of Anissa Murphy, ¶ 15.

11.    In 2024, Specialized was acquired by Rithm Capital Corp. ("Rithm") and was merged with Shellpoint.  In connection with Shellpoint's merger with Specialized, Specialized is now known as Newrez LLC d/b/a Shellpoint Mortgage Servicing.  Declaration of Anissa Murphy, ¶ 6.

12.    Shellpoint began servicing the Mortgage Loan following Rithm Capital Corp.'s acquisition of Specialized.  Complaint, ¶¶ 10, 12; Declaration of Anissa Murphy, ¶ 8.

13.    Shellpoint has never held an ownership interest in the Mortgage Loan. Declaration of Anissa Murphy, ¶ 8.

14.    Shellpoint transmitted a monthly account statement for the Mortgage Loan to Plaintiffs on or about July 9, 2024.  Declaration of Anissa Murphy, ¶ 16.

15.    Plaintiffs began disputing the Wire Transfer with Shellpoint in August of 2024.  Complaint, ¶¶ 24, 26; Declaration of Anissa Murphy, ¶ 17.

16.     Shellpoint is servicing the Mortgage Loan on behalf of Alliant Credit Union ("Alliant").  Declaration of Anissa Murphy ¶ 18.

17.     Shellpoint waived and/or credited the balance of the Mortgage Loan on December 18, 2024.  Declaration of Anissa Murphy, ¶ 19.

18.     Plaintiffs ***are not responsible*** for the Wire Transfer or any charges incurred therewith as they pertain to the Mortgage Loan.  All charges associated with the Wire Transfer have been removed from the Mortgage Loan.  Declaration of Anissa Murphy, ¶ 20.

## III.    ARGUMENT

### A.    Plaintiffs Cannot Avoid Summary Judgment With Conclusory Allegations And Mere Speculation.

Federal Rule of Civil Procedure 56 mandates the entry of judgment against a party who fails to offer admissible evidence sufficient to establish the existence of every element essential to that party's case and on which that party bears the burden of proof.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 327 (1986) (noting also that summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'").  Once a moving party demonstrates a lack of evidence to support the non-moving party's claims, the non-moving party is required to present competent evidence demonstrating a genuine issue for trial.  *Id.* at 324.  The mere existence of

some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Rather, a dispute must exist over a *material* fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis supplied).

To survive a motion for summary judgment, therefore, Plaintiffs must come forward with specific, admissible evidence to support each element of their case; mere conclusory allegations are not enough. *See Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). Speculation, without proof, is likewise insufficient. *See Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 (3d Cir. 1990). In this case, Plaintiffs cannot meet their burden of presenting specific, admissible evidence that demonstrates a genuine dispute of material fact regarding Counts I, III, IV, VI, VIII and IX of their Complaint as to Shellpoint, and therefore those claims should be dismissed with prejudice.

**B.    Plaintiffs' TILA Claim Fails Because Shellpoint Is A Mortgage Servicer.**

Count I of Plaintiffs' Complaint is brought pursuant to Section 1640 the Truth In Lending Act ("TILA"). That provision states, in relevant part:

> [A]ny ***creditor*** who fails to comply with any requirement imposed under this part … with respect to any person is liable to such person.

15 U.S.C. § 1640(a) (emphasis added).

6

The statute refers only to a creditor's liability – not a loan servicer's. "Courts applying TILA uniformly hold that there is no servicer liability under TILA." *Lucien v. Fed. Nat'l Mortg. Assoc.*, 21 F. Supp. 3d 1379, 1383 (S.D. Fla. 2014); *Barnes v. Carrington Mortg. Servs., LLC*, 2016 U.S. Dist. LEXIS 68718, at *3 (D. N. J. May 24, 2016); *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 719 (6th Cir. 2013) ("TILA expressly exempts servicers from liability unless the servicer was also a creditor or a creditor's assignee."); *Cf., Hartman v. Deutsche Bank Nat'l Tr. Co.*, 2008 U.S. Dist. LEXIS 59136 (E.D. Pa. Aug. 1, 2008) ("TILA provides that a servicer … cannot be liable as an assignee unless it 'is or was the owner of the obligation.'"); *Kornea v. Fannie Mae*, 2020 U.S. Dist. LEXIS 18405, at *5, 6 (E.D. Pa. Oct. 6, 2020) (quoting *Hartman*).

Shellpoint is a non-owner servicer of the Mortgage Loan. It was not and is not the owner, and Count I of the Complaint must be dismissed with prejudice as to Shellpoint.

### C.    Plaintiffs' UTPCPL Claim Fails Because Plaintiffs Did Not Justifiably Rely Upon Any Action Of Shellpoint In The Formation Of The Mortgage Loan.

Count III of Plaintiffs' Complaint does not state a viable claim against Shellpoint under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), and therefore must be dismissed.

The Pennsylvania UTPCPL allows "any person" who purchases or leases goods or services to bring an action for an unfair or deceptive trade practice as defined under the law.  73 P.S. § 201-9.2.  The UTPCPL lists specific types of conduct that are inherently deceptive and thus unlawful, *see* 73 P.S. § 201-2(4)(i)-(xx), and also contains a "catch-all" definition of deceptive conduct that prohibits: [e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."  73 P.S. § 201-2(4)(xxi).  ***"In order for a private actor to succeed under this provision, he must prove the elements of common-law fraud, justifiable reliance, causation and damages."***  *Allen-Wright v. Allstate Ins. Co.*, 2008 U.S. Dist. LEXIS 103272, at *19 (E.D. Pa. Dec. 19, 2008) (emphasis added).

Here, Plaintiffs attempt to characterize Shellpoint's post-closing conduct – being its processing of the Wire Transfer in 2024 – as the "fraudulent or deceptive" conduct forming the basis of the UTPCPL.  This is unavailing because it ignores the plain language of the UTPCPL.  Specifically, § 9.2(a) of the UTPCPL creates a private right of action for "[a]ny person who purchases … goods or services primarily for personal, family, or household purposes and ***thereby*** suffers any ascertainable loss of money or property, real or personal, ***as a result of*** the use or employment by any person of a method, act, or practice declared unlawful [by the UTPCPL]."  73 P.S. § 201-9.2(a) (emphasis added).  As the Pennsylvania Supreme

Court has explained, this provision of the UTPCPL requires that a plaintiff prove, *inter alia*, that "the consumer justifiably relied upon the unfair or deceptive business practice **when making the purchasing decision**."  *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 646 (Pa. 2021) (emphasis added).  Consistent with this interpretation of § 9.2(a), this Court and others have held that "[t]he UTPCPL applies to conduct surrounding the … **pre-formation conduct**."  *G.S. Carpentry, Inc. v. Markel Corp.*, 2023 U.S. Dist. LEXIS 131751, at *9 (E.D. Pa. July 31, 2023) (Leeson, J.); *see also Romero v. Allstate*, 2017 U.S. Dist. LEXIS 31965, at *2 (E.D. Pa. Mar. 7, 2017) ("The UTPCPL, on the other hand, applies to conduct surrounding the insurer's pre-formation conduct.").

Neither Shellpoint nor its predecessor, Specialized Loan Servicing, were involved in the origination of the Mortgage Loan and made no representations to Plaintiffs as part of same.  Servicing of the Mortgage Loan first transferred to Specialized in January of 2022.  Therefore, there is no "pre-formation conduct" concerning the Note or HELOC that can be attributable to Shellpoint, and Count III of the Complaint must be dismissed as to Shellpoint, with prejudice.

### D.    Count IV Of Plaintiffs' Complaint Fails Because Plaintiffs' Mortgage Loan Obligation Is Not A "Debt" As Defined By The FCEUA.

The Pennsylvania analog to the Fair Debt Collection Practices Act, the Pennsylvania Fair Credit Extension Uniformity Act (the "FCEUA"), bars debt

collectors from engaging in unfair debt collection practices. The FCEUA defines "debt" as follows:

> An actual or alleged past due obligation, claim, demand, note or other similar liability *of a consumer* to pay money …"

73 P.S. § 2270.3 (emphasis added). The FCEUA defines a consumer as:

> "CONSUMER." A natural person *residing in this Commonwealth who owes or is alleged to owe a debt* …"

*Id.* (emphasis added).

Plaintiffs are residents of Florida and therefore, have no standing under the FCEUA. Furthermore, the wire transfer was a third party's fraudulent act and Plaintiffs never incurred any collectible debt. Because their FCEUA claim is premised upon their allegations that Shellpoint engaged in unfair practices "by attempting to collect *the debt* in violation of the FCEUA," Plaintiffs' claims fail as the fraudulent wire transfer that was unwound is not actually a "debt" as defined by statute. Therefore, their FCEUA claim at Count IV must be dismissed with prejudice.

### E. Count VI Of Plaintiffs' Complaint Should Be Dismissed Because Shellpoint's Conduct Is Not "Trade Or Commerce" Governed By The FDUTPA.

Count VI of Plaintiffs' Complaint is premised upon allegations that Shellpoint violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). This Court should dismiss Plaintiffs' FDUTPA claim as to Shellpoint because loan

servicing is not an act or practice in trade or commerce, so the FDUTPA does not apply. The FDUTPA proscribes only certain "acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

"Trade or commerce" is limited to "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value . . . ." *Id*. § 501.203(8). Because of this limitation, the FDUTPA does not apply to every act or omission, and if the test is not met, the court must dismiss the claim. *See*, *e.g*., *Williams v. Nationwide Credit, Inc.,* 890 F. Supp. 2d 1319, 1322 (S.D. Fla. 2012) (debt collector's actions were not "trade or commerce").

The "trade or commerce" threshold is not met by Shellpoint's conduct at issue in this lawsuit. A loan servicer such as Shellpoint does not solicit, provide, offer, or distribute any product or service to the public; its role instead is to service borrower loans and it provides that service to the owners of said loans, not the public. That Shellpoint may be in contact with members of the public in the course of servicing loans is not enough to implicate the statute.

Indeed, Florida District Courts have held that a loan servicer's actions in servicing a mortgage loan do not constitute "trade or commerce" under the FDUTPA. *See, e.g.*, *Benjamin v. CitiMortgage, Inc.*, 2013 WL 1891284, at *5 (S.D. Fla. May 6, 2013); *Nardolilli v. Bank of Am. Corp.*, 2013 WL 12154541, at *4 (S.D.

11

Fla. Dec. 6, 2013) (dismissing FDUTPA claim because "Courts have held that the servicing of a mortgage do[es] not fall within the purview of `trade or commerce.'") (collecting cases). Loan servicing is conduct incident to the previous origination of a mortgage loan, and during the post-sale servicing phase of a loan, the servicer generally does not offer products or services, for sale or trade, to borrowers.

Servicer responsibilities fall outside the trade or commerce definition under FDUTPA. *Blake v. Seterus, Inc.*, 2017 WL 543223, at *2 (S.D. Fla. Feb. 9, 2017) (dismissing FDUTPA claim because "Defendant loan servicer was not engaged in any advertisement or solicitation when it responded to Plaintiff's request for the reinstatement amount"); *see also Merrill Lynch Bus. Fin. Servs., Inc. v. Performance Mach. Sys. U.S.A. Inc.*, 2005 WL 975773, at *9 (S.D. Fla. Mar. 4, 2005) (report and recommendation adopted dismissing FDUTPA claim where plaintiff "fail[ed] to allege that the lending relationship . . . constituted `trade or commerce' or the `conduct of any trade or commerce' under Fla. Stat. § 501.203(8)"). Mortgage servicing includes the receipt and processing of payments, "informing [borrowers] of [their mortgage] default[s]," arranging "[borrowers'] foreclosure solutions," and taking "loan modification application[s] into consideration." See, e.g., *Clark v. HSBC Bank USA, Nat'l Ass'n*, 664 F. App'x 810, 813 (11th Cir. 2016) (unpublished opinion).

The Plaintiffs' FDUTPA claims here are predicated upon classic loan-servicing conduct – the processing of draw requests.  While Plaintiffs are alleging that Shellpoint failed to adequately protect them from the Wire Transfer, such conduct does not constitute "trade or commerce" and Count VI should be dismissed with prejudice.

### F.    Counts VIII And IX Of Plaintiffs' Complaint Should Be Dismissed Because They Are Barred By The Gist Of The Action Doctrine.

#### i.    The Gist Of The Action Doctrine.

The gist of the action doctrine "forecloses a party's pursuit of a tort action for the mere breach of contractual duties without any separate or independent event giving rise to the tort."  *Wen v. Willis*, 117 F. Supp. 3d 673, 680 (E.D. Pa. 2015) (Beetlestone, J.), quoting *Sköld v. Galderma Labs., L.P.*, 99 F. Supp. 3d 585, 600 (E.D. Pa. Apr. 17, 2015) (citations and internal quotation marks omitted).  "If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract – *i.e.,* a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract – then the claim is to be viewed as one for breach of contract."  *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014).  "[T]he gist of the action doctrine bars tort claims against an individual defendant where the contract between the plaintiff and the officer's company created the duties that the individual allegedly breached."

*Williams v. Hilton Grp.*, 93 Fed. Appx. 384, 387 (3d Cir. 2004) (*per curiam*).  Thus, the gist of the action doctrine bars tort claims:

> (1)    Arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.

*Wen*, 117 F. Supp. 3d at 680, quoting *eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 19 (Pa. Super. 2002) (citations omitted).

### ii.    The Gist Of The Action Doctrine Bars Plaintiffs' Conversion Claim.

In Count VIII of the Complaint, Plaintiffs bring a claim for conversion.  Under Pennsylvania law, conversion is defined as "the deprivation of another's right of property, or use or possession of a chattel, or other interference therewith, without the owner's consent and without legal justification."  *Fenton v. Balick*, 821 F. Supp. 2d 755, 760 (E.D. Pa. Nov. 3, 2011); *Universal Premium Acceptance Corp. v. York Bank & Trust Co.*, 69 F.3d 695, 704 (3d Cir. 1995).  In relationship to its conversion theory, Plaintiffs seek to recover the full amount of the already-replenished Wire Transfer, plus punitive damages.

As detailed by this Court in *Wen*, *supra*, the gist of the action doctrine bars tort claims when any one of four conditions are satisfied.  Putting aside the fact that the balance of the Wire Transfer was zeroed out prior to Plaintiffs filing their

Complaint, the gist of the action doctrine clearly bars Plaintiffs' tort claim. Indeed, Plaintiffs' claim is based upon the premise that they "had a right to possession of the funds that belonged to them through their HELOC," and that Defendants "have interfered with and deprived Plaintiffs of their right to possess their property." Complaint, Paragraphs 119, 120. The Plaintiffs' "right to possession of the funds" is dependent solely upon the terms of the Note and HELOC, held by Alliant and serviced by Shellpoint.

In *Wen, supra*, this Court noted that:

> Many state and federal courts in Pennsylvania … have barred conversion claims in which a plaintiff alleges that the defendant withheld money owed under a contract. *See, e.g.,* [*Vives v. Rodriguez*, 849 F. Supp. 2d 507, 517 (E.D. Pa. 2012)] (dismissing plaintiff's conversion claim because she simply alleged that defendant failed to turn over profits from a sale of property due under an agreement); *Kia v. Imaging Sciences Int'l, Inc.*, 735 F. Supp. 2d 256, 271 (E.D. Pa. 2010) (holding that such a "claim is therefore entirely dependent on the existence and validity of th[e] agreement, as there can be no liability in its absence"); *Pittsburgh Constr. Co. v. Griffith*, 834 A.2d 572, 584 (Pa. Super. Ct. 2003) (holding that the plaintiff's "tort and breach of contract claims [were] inextricably intertwined, the success of the conversion claim depending entirely on the obligations as defined by the contract").

117 F. Supp. 3d at 683. *See also Vives, supra*, 849 F. Supp. 2d at 516 ("[B]oth Pennsylvania intermediate courts and courts of this Circuit have made clear that where a tortious claim for conversion is based solely on the failure to perform under

a contract, it is barred by the gist of the action doctrine."); *Bengal Converting Servs., Inc. v. Dual Printing, Inc.*, 2012 WL 831965, at *4 (E.D. Pa. Mar. 13, 2012) (gist of the action doctrine barred conversion claim that was "grounded solely in Dual Printing's alleged failure to fulfill its obligations under the purported contract."); *Montgomery v. Fed. Ins. Co.*, 836 F. Supp. 292, 301-02 (E.D. Pa. 1993) (granting summary judgment on conversion claim because of, *inter alia*, the "firmly accepted … doctrine that an action for conversion will not lie where damages asserted are essentially damages for breach of contract").

### iii.    The Gist Of The Action Doctrine Bars Plaintiffs' Negligence Claim.

Similar to Plaintiffs' conversion claim, the gist of the action doctrine bars their negligence claim.  Indeed, the only basis for Plaintiffs' negligence claim is that Alliant and Shellpoint failed to protect Plaintiffs' line of credit pursuant to the terms of the Mortgage Loan.

The gist of the action doctrine applies in cases involving mortgage transactions.  In *Strausser v. PRAMCO, III*, 944 A.2d 761 (Pa. Super. 2008), the plaintiff brought suit against a mortgage holder for breach of contract, negligence, fraud and misrepresentation, claiming that the holder had agreed to forbear from foreclosure.  In upholding the dismissal of the negligence, fraud and misrepresentation claims, the court held that all of the alleged misrepresentations underlying those claims were "directly related to the underlying contractual rights

16

and obligations of the parties as defined by the loan agreements and mortgages between them, and all of them can be resolved only through a determination of those contractual rights and obligations." *Id*. at 768. Similarly, in *Jones v. ABN Amro Mortgage Group. Inc.*, 551 F. Supp. 2d 400 (E.D. Pa. 2008), the plaintiffs alleged that a mortgage broker was an agent of the lender for the purpose of collecting and accounting for plaintiffs' mortgage loan payments and that the lender was negligent in supervising the broker. However, in dismissing the negligence claim under the gist of the action doctrine, the court concluded that plaintiffs could not fashion a tort claim out of what was essentially a claim for breach of a mortgage agreement. *Id*. at 403-404.

As in *Strausser* and *Jones*, Plaintiffs' claims arise, and are thus derivative of, the specific terms of the Note and HELOC. Simply put, Plaintiffs' allegations arise strictly from the parties' contractual relationship; chiefly, whether Shellpoint breached the terms of the Mortgage and Note. As such, Plaintiffs' negligence claim is barred by the gist of the action doctrine.

**G.    Count IX of Plaintiffs' Complaint Should Be Dismissed Because It Is Barred By The Economic Loss Doctrine.**

Plaintiffs' negligence claim is also barred by the economic loss doctrine because their only possible injury arises from an economic loss. The economic loss doctrine provides that "no cause of action can be maintained in tort for negligence or strict liability where the only injury was 'economic loss'-that is, loss that is neither

17

physical injury nor damage to tangible property." *Sarsfield v. Citimortgage, Inc.*, 707 F. Supp. 2d 546, 556 (M.D. Pa. 2010) (barring unfair trade practices claim that was interdependent with claims that could arise from the mortgage contract between the parties). Because Plaintiffs' negligence claim is inextricably tied in with the Mortgage Loan, it must be dismissed with prejudice.

## H. Counts VIII And IX Of Plaintiffs' Complaint Should Be Dismissed Because They Are Barred By Florida's Economic Loss Rule.

Similar to Pennsylvania's gist of the action doctrine, Florida's "economic loss rule" prohibits Plaintiffs from casting tort claims that fail to include any allegations "independent of any breach of contract claim" as Florida law requires. *See Burdick v. Bank of Am., N.A.*, 99 F. Supp. 3d 1372 (S.D. Fla. 2015) (citing *Tiara Condominium Ass'n, Inc. v. Marsh & McLennan Co., Inc.*, 110 So. 3d 399, 408 (Fla. 2013) (Pariente, J., concurring) (dismissing a negligence claim against mortgage servicer, as the servicer's duty to properly service the mortgage arose from the mortgage and note and, as such, plaintiff's negligence claim failed to allege any negligence "independent of any breach of contract claim" as Florida law requires); *see also Rousseau v. Green Tree Servicing, LLC*, 2015 U.S. Dist. LEXIS 181145, at *8, 9 (S.D. Fla. 2015) (dismissing negligence claim where defendant's alleged failure to properly service mortgage arose from the mortgage and note, and as such plaintiff's negligence claim failed to allege any negligence "independent of any

breach of contract claim," as Florida law requires) (quoting *Tiara Condominium Ass'n, Inc.*, 110 So.3d at 408).

Because Plaintiffs' tort claims are dependent solely upon the terms of the Note and HELOC, held by Alliant and serviced by Shellpoint, Counts VIII and IX of the Complaint must be dismissed with prejudice.

## IV.    <u>CONCLUSION</u>

For the above reasons, Defendant, Newrez LLC d/b/a Shellpoint Mortgage Servicing, respectfully requests that this Court grant the instant Motion and dismiss Counts I, III, IV, VI, VIII and IX of Plaintiffs' Complaint against Shellpoint with prejudice.

Dated: June 26, 2025

/s/ Jeffrey M. Stacko
Jeffrey M. Stacko, Esq.
Pa. I.D. No. 314941
DINSMORE & SHOHL LLP
1300 Six PPG Place
Pittsburgh, PA 15222
412.281.5000 (t)
412.281.5055 (f)
jeffrey.stacko@dinsmore.com

*Counsel for Defendants*
*Newrez    LLC    d/b/a    Shellpoint*
*Mortgage Servicing and Alliant Credit*
*Union*