**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STEPHEN SKERTICH and CYNTHIA SKERTICH, | Civil Action No.: 2:24-cv-06809-PD |
|      Plaintiffs, | |
| v. | |
| NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING and ALLIANT CREDIT UNION, | |
|      Defendants. | |

## DECLARATION OF ANISSA MURPHY

I, Anissa Murphy, depose and state pursuant to 28 U.S.C. § 1746 as follows:

1.      I am employed by NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") as a Director – Fraud Investigations Unit.  Shellpoint is a mortgage loan servicer. Shellpoint is responsible for, among other things, receiving and crediting payments made pursuant to the terms of notes and mortgages evidencing mortgage loans, including the mortgage loan that was made to Stephen Skertich and Cynthia Skertich and ending in loan number XXXXXX3348 (the "Mortgage Loan").

2.      I am an authorized signer for Shellpoint.  I am competent to testify to the matters stated in this declaration, and this declaration is made on my personal knowledge and on information contained in the business records maintained by Shellpoint.

3.      As part of my job, I am familiar with the manner in which the business records, maintained by Shellpoint for the purpose of servicing consumer mortgage loans, are compiled, maintained, and retrieved, and I also have direct access to those business records.

1

4.     The business records (which include data compilations, electronically imaged documents, and other similar records) are maintained by Shellpoint electronically and are made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records.  The business records are regularly kept by Shellpoint in the course of its business of servicing mortgage loans.  It is also Shellpoint's regular practice to make and retain such records.

5.     Specialized Loan Servicing, LLC ("Specialized") began servicing the Mortgage Loan effective January 27, 2022.  Specialized's servicing of the Mortgage Loan included, among other things, receiving and crediting payments made pursuant to the Loan's terms.

6.     In 2024, Specialized was acquired by Rithm Capital Corp. ("Rithm"), and was merged with Shellpoint. In connection with Shellpoint's merger with Specialized, Shellpoint acquired Specialized's servicing records and integrated them into Shellpoint's records relating to the Mortgage Loan.  It is Shellpoint's regular business practice to integrate a prior servicer's records into Shellpoint's business records, and to rely upon the accuracy of those integrated records in providing its loan servicing functions.

7.     In connection with making this declaration, I personally examined Shellpoint's business records relating to the Mortgage Loan, including the business records integrated from Specialized (collectively, the "Mortgage Loan Business Records").  The following statements in this declaration are based on information contained in the Mortgage Loan Business Records and my personal knowledge of Shellpoint's business practices and policies.

8.     As a result of Rithm's acquisition of Specialized, Shellpoint began servicing the Mortgage Loan.  Shellpoint has never held an ownership interest in the Mortgage Loan.

9.      Attached hereto as **Exhibit 1** is a true and accurate copy of a Home Equity Line of Credit Agreement dated December 28, 2021, in the original principal amount of $500,000.00, which was made by Stephen Skertich and Cynthia Skertich ("Plaintiffs") to Spring EQ, LLC, and which is part of the Mortgage Loan Business Records (the "Note").

10.     Attached hereto as **Exhibit 2** is a true and accurate copy of the Mortgage which secures payment of the Note and is part of the Mortgage Loan Business Records.  The Mortgage granted a security interest in certain real property commonly known as 6911 Devon Cove, Lakewood Ranch, Florida 34202 (the "Property").

11.     The Mortgage Loan was initially serviced by Spring EQ, LLC until Specialized began servicing the Loan in January of 2022.  Attached here as **Exhibit 3** is correspondence from Specialized to Plaintiffs notifying them of the servicing transfer.

12.     According to the Mortgage Loan Business Records, Specialized had no communications with Plaintiffs prior to or during the Mortgage Loan's origination and/or closing with respect to the Mortgage Loan.

13.     On or about June 5, 2024, Specialized received a HELOC Wire Request Form in the amount of $425,650.  Attached here as **Exhibit 4** is a true and correct copy of the Wire Request Form.

14.     Included with the submittal were state and federal identification documents purporting to be those of Mr. Skertich.

15.     In response to receipt of the Wire Request Form, a wire transfer in the amount of $425,650 was made to CitiBank (the "Wire Transfer").

16.    Shellpoint transmitted a monthly account statement for the Mortgage Loan to Plaintiffs on or about July 9, 2024.  Attached here as **Exhibit 5** is a true and correct copy of the monthly account statement.

17.    Plaintiffs began disputing the Wire Transfer with Shellpoint in August of 2024.

18.    Shellpoint is servicing the Mortgage Loan on behalf of Alliant.

19.    Shellpoint waived and/or credited the balance of the Wire Transfer on December 18, 2024.

20.    Plaintiffs are not responsible for the Wire Transfer or any charges incurred therewith as they pertain to the Mortgage Loan.  All charges associated with the Wire Transfer have been removed from the Mortgage Loan.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 25, 2025

By    _Anissa Murphy_
ANISSA MURPHY

# EXHIBIT 1

# HOME EQUITY LINE OF CREDIT AGREEMENT
# AND DISCLOSURE STATEMENT

SKERTICH
Loan #: ████9527
MIN: 101369830000095274

**Agreement Date: DECEMBER 28, 2021**
**Borrower: STEPHEN T SKERTICH and CYNTHIA A SKERTICH**
**Property Address: 6911 DEVON COVE, LAKEWOOD RANCH, FL 34202**
**Lender: SPRING EQ, LLC**
**Account Number:**
**Credit Limit: $500,000.00**
**Maturity Date: DECEMBER 28, 2051**

## 1. Definitions.

(A) The pronouns "you" and "your" refer to all Borrowers signing this Agreement, jointly and individually, and each other person or legal entity that agrees to pay this Agreement. "We", "us" and "our" refer to the Lender, or any person or legal entity that acquires an interest in the Line of Credit.

(B) "Account" means an account you carry with us. The Account Number is stated at the beginning of this Agreement.

(C) "Account Balance" means the sum of the unpaid principal balance advanced under the terms of this Agreement, finance charges, fees and other charges that are due, and other amounts advanced to you or others under the terms of this Line of Credit.

(D) "Agreement" refers to this Agreement, and any extensions, renewals, modifications or substitutions of it.

(E) "Billing Cycle" means the interval between the days or dates of regular periodic statements.

(F) "Credit Limit" means the maximum amount of principal we will permit you to owe us under this Line of Credit, at any one time. Your Credit Limit is stated at the top of this Agreement.

(G) The "Draw Period" begins on the Agreement Date and is the **120**-month period during the term of this Agreement that you may request advances.

(H) "Line of Credit" refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures and this Agreement.

(I) "Minimum Advance" means the smallest amount of money we will advance to you at your request.

(J) "Minimum Payment" means the minimum payment amount required under the Minimum Payment section.

(K) "Payment Date" is the payment due date as provided on your periodic statements.

(L) "Property" means the real property that secures your obligations under this Line of Credit.

(M) The "Repayment Period" begins immediately after the Draw Period and continues for **240** months. You may not request advances during the Repayment Period.

Other important terms are defined throughout this Agreement.

## 2. Planned Unit Development.

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in _____ (the "Declaration"). The Property is a part of a Planned Unit Development (PUD) known as: **COUNTRY CLUB EAST AT LAKEWOOD RANCH**. The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of your interest.

## 3. Account Request, Promise to Pay and Security Interest.

You promise to pay us or our order, at our address, or at such other location as we may designate, so much of the Credit Limit as may be advanced under this Agreement, plus finance charges, fees, charges, costs, and expenses as described in this Agreement.

As stated later in this Agreement, we will apply all payments and credits in accordance, with our standard operating procedures and with the requirements of applicable law.

If we have extended you credit over your Credit Limit, the amount over your Credit Limit will also be due in addition to your Minimum Payment. There may be other charges described in this Agreement that you will be obligated to pay. You agree that

9527

our books and records will be sufficient evidence of your obligations to us under this Agreement.

We have secured your obligations under this Line of Credit by taking a security interest (by way of a separate security instrument dated **DECEMBER 28, 2021**) in the Property located at: **6911 DEVON COVE, LAKEWOOD RANCH, FL 34202**. Property securing any other loans that you have with us may also secure this Agreement.

**4. Advances.**
You may request advances by the following methods, to the extent the means is allowed in your state or jurisdiction:

- **CHECK**

We will make the advance by:

- Advancing the amount directly to you,
- Depositing it in your Account, or
- By paying a designated third person or account.

We will record the amount as an advance and increase your Account Balance. Checks may not be written to "cash" and must be submitted for deposit.

**5. Advance Limitations.**
We do not have to make any advances during any period in which you have a right to cancel. Your ability to request and access advances is also subject to the following additional limitations:

You must request an initial advance on the Agreement Date equal to at least $50,000.00. No additional draws may be taken for ninety (90) days following the Agreement Date.

**6. Minimum Advance.**
You must request and obtain an initial advance on the Agreement Date equal to at least $50,000.00. No additional draws may be taken for ninety (90) days following the Agreement Date. Following this ninety (90) day period, you may request additional draws in minimum amounts of $1,000.00. Note, supplemental draws may take up to 3 days to clear in the event the line of credit was paid down within 72 hours of the advance amount.

**7. Credit Limit.**
Subject to the terms and conditions of this Agreement, you may borrow on this Line of Credit up to the Credit Limit. You agree not to request or obtain an advance that will cause the unpaid principal of your Account Balance to exceed the Credit Limit. You understand that we will not ordinarily grant a request for an advance that would cause the unpaid principal of your Account Balance to be greater than the Credit Limit, but that we may, at our option, grant such a request without obligating ourselves to do so in the future. Your Credit Limit will not be increased if you overdraw the Line of Credit. If you exceed the Credit Limit, you agree to immediately pay the amount by which the unpaid principal of your Account Balance exceeds the Credit Limit, even if we have not yet billed you. Any sums in excess of the Credit Limit will not be secured by the Property, unless they are for accrued but unpaid interest or expenditures made pursuant to the security instrument securing the Property.

█████9527

## 8. Annual Percentage Rate (APR)

**Variable Rate.**

This Line of Credit has a variable interest rate. The APR may change and will be based on the value of an index. The "Index Rate" will be the highest Prime Rate as published in the "Money Rates" table of *The Wall Street Journal* as of the first business day of the calendar month. To determine the APR, we will add a "Margin" of **2.375** percentage point(s) to the value of the Index.

The initial periodic rate which will be used to calculate the Finance Charge is the Daily Periodic Rate of **0.0154%** and the corresponding APR of **5.625%**. The APR includes interest and no other costs. The stated initial periodic rate and corresponding APR reflect the Index Rate plus the Margin as described in this section.

**Rate Changes.**

The APR may increase if the Index Rate increases. An Index Rate increase will result in a higher finance charge and it may have the effect of increasing your periodic Minimum Payment. A decrease in the Index Rate will have the opposite effect as an increase. An Index Rate increase or decrease will take effect on the date the Index Rate changes. The APR can increase or decrease monthly. If the Index Rate changes more frequently than the APR, we will use the Index Rate in effect on the day we adjust the APR to determine the new APR.

**Rate Change Limitations.**

APR changes are subject to the following limitations. The lifetime floor does not apply to any initial discount rates if applicable. Any per adjustment or annual limitations will not prevent the rates from increasing to the minimum APR at the end of the initial discount rate period if applicable.

**Lifetime Floor.** The minimum APR that can apply during the term of the Line of Credit is the lesser of (a) 4%, or (b) the initial APR.

**Lifetime Cap.** The maximum APR that can apply during the term of this Line of Credit is 18.00% or the maximum APR allowed by applicable law, whichever is less.

## 9. Finance Charges.

Finance charges begin to accrue immediately when we make an advance to you. Finance charges will be computed as follows:

To calculate the finance charge for each Billing Cycle, a daily periodic rate is multiplied by the Average Daily Balance of your Account Balance. The daily balance is your Account Balance at the beginning of each day, plus any new advances, minus any payments or credits that apply to debt repayment, and any unpaid finance charges, fees and charges. Then, all the daily balances for the Billing Cycle are summed, and divided by the total number of days in the Billing Cycle. The resulting value is the Average Daily Balance. This value is then multiplied by the number of days in the Billing Cycle to calculate the finance charge.

**Other Fees and Charges.**

I understand that I may also be responsible for the following additional fees and charges:

**Fees Due at Closing:**

| | |
|---|---|
| Origination Point(s) 0.059% | $295.00 |
| Appraisal Fee | $675.00 |
| Credit report | $5.50 |
| Flood certification | $6.00 |
| MERS REGISTRATION FEE | $24.95 |
| DOCUMENT PREP FEE | $26.50 |

9527

| | |
|---|---|
| **TITLE - ELECTRONIC DOCUMENT DELIVERY FEE** | **$2.50** |
| Deed $N/A Mortgage $214.00 Releases $N/A | $214.00 |
| State tax/stamps   Deed $2,750.00 Mortgage $N/A | $2,750.00 |
| **CLOSING SETTLEMENT FEE** | **$450.00** |
| **LENDERS TITLE INSURANCE** | **$899.75** |

**Fees Due During the Term of the Agreement:**

- Annual Maintenance Fee. $99.00 If the subject property is located in Pennsylvania, Texas, or Washington state, special limits will apply.
- Stop Payment on Line of Credit Check. $15.00 per item.
- Return Check Fee. $29.99 If the subject property is located in New Jersey, special limits will apply.

**Fees Due at Termination:**

- Termination Fee. N/A

**Charges to Your Account.**

We may charge your Account to pay other fees and costs that you are obligated to pay under this Line of Credit or under the instrument securing this Agreement. In addition, we may charge your Account for funds required for continuing required insurance coverage or costs to protect or perfect our security interest in the Property. Any amount so charged to your Account will be an advance on which finance charges will accrue. However, we have no obligation to provide any of the advances referred to herein.

**10. Payment Terms.**

**Payment Date.**

During the term of this Agreement, a Minimum Payment will be due on or before the Payment Date for any Billing Cycle in which there is an outstanding balance. Your Minimum Payments will be due monthly.

**Late Charges.**

If your payment is more than 15 days late, we will charge a late fee of 5.00% of the overdue monthly principal and interest payment (or interest payment, if it only consists of interest).

**11. Minimum Payments.**

On or before each Payment Date, you agree to make a payment of at least the Minimum Payment amount. Periodic Minimum Payments are required during both the Draw Period and Repayment Period.

**During the Draw Period,** you promise to pay the:

Minimum Payment, which will equal the greater of (a) $100.00; or (b) the sum of all accrued finance charge and other charges for the Billing Cycle, and shall be due and payable on the date shown on the monthly statement.

If we have extended you credit over your maximum Credit Limit, the amount over your maximum Credit Limit will also be due in addition to your Minimum Payment. There may be other charges described in this Agreement that you will be obligated to pay. You agree that our books and records will be sufficient evidence of your obligations to us under this Agreement.

**During the Repayment Period,** payments will be due monthly. Your minimum monthly payment will equal the greater of (a) $100; or (b) 1/240th of your outstanding Account Balance at the end of the Draw Period, plus all accrued finance charge and other fees, charges and costs. We will calculate this amount by taking the outstanding Account Balance on the last day of the Draw Period and dividing it by 240 months and then adding any finance charge that accrues but remains unpaid during the Billing Cycle plus any other fees, charges and costs to the fixed principal payment that is due.

9527

If your Account Balance on a Payment Date is less than the Minimum Payment amount, you must pay only the amount necessary to reduce your Account Balance to zero. On the Maturity Date, you must pay the entire outstanding Account Balance. If you make extra outstanding principal balance payments, such payments will not extend or postpone the due date of monthly Minimum Payments or reduce the amount of future fixed principal payments.

**12. Principal Reduction.**

    **Draw Period.** During the Draw Period, the Minimum Payment may not reduce the principal balance outstanding on your Account Balance.

    **Repayment Period.** During the Repayment Period, the Minimum Payment may not, to the extent permitted by law, fully repay the principal balance outstanding on your Account Balance.

**13. Final Payment.**

On the Maturity Date listed in this Agreement, you must pay any remaining Account Balance outstanding. You will be required to pay the entire outstanding balance in a single payment.

We are not obligated to refinance your Line of Credit at that time, but will consider your request to do so. If you refinance this Line of Credit at maturity, you may have to pay some or all of the closing costs normally associated with such refinancing even if you obtain financing from us.

**14. Additional Payment Terms.**

If you fail to fully pay the Minimum Payment amount, we may, but are not required to, advance money to you to make the payment. All the terms of this Agreement will apply to such an advance. You can pay off all or part of what you owe at any time. If you pay more than the Minimum Payment amount, you must continue to make your periodic Minimum Payments as otherwise required by this Agreement.

We will apply all payments and credits in accordance with our standard operating procedures and with the requirements of applicable law. We may, at our discretion, withhold available credit on your Account up to the amount of payments you make to assure that the payment instrument is honored. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment.

A Returned Payment Fee of up to $29.99 will be charged if your payment is returned due to non-sufficient funds. This fee will be subject to change as allowed by applicable law.

**15. Periodic Statements.**

If you have an outstanding balance of $1.00 or greater on your Line of Credit or have any Line of Credit activity, we will send you a periodic statement at the end of each Billing Cycle. This periodic statement will reflect, among other things, credit advances, finance charges, other charges, payments made, other credits, your previous Account Balance and your new Account Balance. The periodic statement will also identify your Minimum Payment for the cycle and the Payment Date.

**16. Property Insurance.**

This Line of Credit requires homeowner's insurance on the property, which you may obtain from a company of your choice that we find acceptable. You promise to insure the Property in the amount we require against fire and other hazards(including flood if we require it). You promise to name us as a loss payee under the policy(ies). If we request it, you agree to deliver to us a copy of the policy(ies) and proof that all premiums have been paid in full. Subject to applicable law, if you fail to obtain or maintain insurance as required, we may purchase insurance to protect our own interest, add the premium(s) to your Account Balance and/or pursue any other remedies available to us.

If the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Property which is satisfactory to us and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which we require insurance, then your obligation to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association

█████9527

policy.

What we require as a condition of this waiver can change during the term of the Line of Credit.

You shall give us prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to you are hereby assigned and shall be paid to us. We shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to you.

**17. Public Liability Insurance.**
You shall take such actions as may be reasonable to ensure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to us.

**18. Condemnation.**
The proceeds of any award or claim for damages, direct or consequential, payable to you in connection with any condemnation or other taking of all or any part of the Property, or to common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to us. Such proceeds shall be applied by us to the sums secured by the Security Instrument.

**19. Commissions.**
You understand and agree that we (or our affiliate) will earn commissions or fees on any insurance products purchased through us (or our affiliate), and may earn such fees on other services that you buy through us or our affiliate.

**20. Termination.**
You may terminate this Line of Credit at any time upon written notice to us. Termination by one Borrower terminates the Line of Credit for all Borrowers. Termination will not affect your obligation to repay advances made prior to the termination, nor will it alter your duties to perform under the terms of an instrument securing this Agreement until such instrument is released.

**21. Waivers and Consent.**
To the extent not prohibited by law and except for any required notice of right to cure for the failure to make a required payment, you waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor. To the extent not prohibited by law, you and any other party to this Line of Credit also consent to the following actions that we may take, and waive defenses that may be available based on these actions, or based on the status of a party to this Line of Credit:

- We may renew or extend payments on this Agreement, regardless of the number of such renewals or extensions. We may release any Borrower or other person who may be liable for the indebtedness under this Agreement.
- We may release, substitute or impair any Property securing this Agreement. We may invoke our right of set-off.
- We may enter into any sales or repurchases of this Agreement to any person in any amounts and you waive notice of such sales or repurchases.
- You agree that any Borrower is authorized to modify the terms of this Agreement or any other Line of Credit document.
- We may inform any party who guarantees this Line of Credit of any accommodations, renewals, extensions, modifications, substitutions or future advances.
- No delay or forbearance on our part in exercising any of our rights or remedies will be construed as a waiver by us, unless such waiver is in writing and is signed by us.

**22. Integration and Severability.**
This Agreement is the complete and final expression of our agreement. If any provision(s) of this Agreement is/are unenforceable, then the unenforceable provision(s) will be severed and the remaining provisions will still be enforceable.

9527

**23. Notices, Financial Reports and Additional Documents.**
Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the Property Address above, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. You will inform us in writing of any change in your name, address or other application information. You agree to supply us with whatever information we reasonably feel is necessary to decide whether to continue this Line of Credit. We will make requests for this information without undue frequency, and will give you reasonable time in which to supply the information. All financial statements and information you give us will be correct and complete. You agree to sign, deliver and file any additional documents or certifications that we may consider necessary to perfect, continue and preserve your obligations under this Line of Credit and to confirm our lien status on any Property. Time is of the essence.

**24. Tax Deductibility.**
You should consult a tax advisor regarding the deductibility of interest and charges under this Agreement.

**25. Default.**
You will be in default if any of the following occur:
- You fail to make a payment as required by this Agreement.
- Your action or inaction adversely affects the Property or our rights in the Property.
- You engage in fraud or material misrepresentation in connection with this Line of Credit.

**26. Suspension of Credit and Reduction of Credit Limit.**
We may temporarily prohibit you from obtaining additional advances or reduce your Credit Limit during any period in which any of the following are in effect:
- The value of the Property securing this Line of Credit declines significantly below its appraised value for purposes of this Line of Credit.
- We reasonably believe that you will not be able to meet the repayment requirements under your Line of Credit due to a material change in your financial circumstances.
- You are in default of a material obligation under this Line of Credit. You understand that we consider all of your obligations to be material. Categories of obligations that we consider material include, but are not limited to: your obligation to not commit fraud or misrepresentation in connection with this Line of Credit; your obligation to meet the repayment terms of this Line of Credit; your obligation to not adversely affect the Property or our rights in the Property; your obligation to pay fees and charges; your advance obligations; your obligation to fulfill the terms of the instrument securing this Agreement, and any other security instruments on the Property; your obligation to notify us; and your obligation to provide us with information.
- Government action prevents us from imposing the APR provided for in this Agreement.
- The priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than 120 percent of your Credit Limit.
- The maximum APR allowed under this Agreement is reached.
- We are notified by a regulatory agency that continued advances constitute an unsafe and unsound practice.
- Any Borrower requests a suspension of credit privileges.

In order to reinstate your credit privileges under the original terms of this Agreement, you must send us a written request to that effect. Your credit privileges will only be reinstated if we determine that the condition that caused us to prohibit additional extensions and/or reduce the Credit Limit no longer exists. If appraisal or credit report fees are incurred in making this determination, we may charge you such fees if allowed by applicable law. If credit privileges were suspended at your request, they need not be reinstated unless all Borrowers request reinstatement.

**27. Remedies.**
After you default, and after we give any legally required notice and opportunity to cure, we may at our option do any of the following:
- We may terminate this Line of Credit and make all or any part of the amount owing by the terms of this Agreement immediately due.
- We may temporarily or permanently prohibit any additional advances.
- We may temporarily or permanently reduce the Credit Limit.

9527

- We may demand additional security or additional parties to be obligated to pay this Agreement.
- We may make a claim for any and all insurance benefits or refunds that may be available on your default.
- We may make amounts advanced on your behalf immediately due, and we may add these amounts to the Account Balance.
- We may use any and all remedies we have under applicable law or any agreement securing this Agreement.

Except as otherwise required by law, by choosing a remedy, we do not give up our right to use another remedy. We do not waive a default if we choose not to use a remedy. By electing not to use any remedy, we neither waive our right to later consider the event a default, nor to use any remedies if the default continues or occurs again.

### 28. Collection Expense and Attorney's Fees.
On or after default, to the extent permitted by law, you agree to pay all expenses of collection, enforcement or protection of our rights and remedies under this Line of Credit. Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses. To the extent permitted by the United States Bankruptcy Code, you agree to pay the reasonable attorneys' fees we incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

### 29. Obligations of Persons Under this Agreement.
Your obligation to pay this Line of Credit is independent of the obligation of any other person who has also agreed to pay it. If more than one person signs this Agreement, each person is fully and personally obligated to keep all of the promises made in this Agreement, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Agreement is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Agreement is also obligated to keep all of the promises made in this Agreement. The holder of the Agreement may enforce its rights under this Agreement against each person individually or against all of you together. Any extension of, or new obligations under, this Line of Credit will not affect your duty or obligation to pay. This means that any one of you may be required to pay all of the amounts owed under this Agreement.

### 30. PUD Obligations
You shall perform all of your obligations under the PUD's Constituent Documents. The "Constituent Documents" are the: (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. You shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents. If you do not pay PUD dues and assessments when due, then we may pay them. Any amounts disbursed by us under this paragraph shall become additional debt of yours secured by the Security Instrument. These amounts shall bear interest from the date of disbursement at the Agreement rate and shall be payable, with interest, upon notice from us to you requesting payment.

### 31. Prior Consent.
You shall not, except after notice to us and with our prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of us; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to us.

### 32. Set-Off.
We may set off any amount due and payable under the terms of this Agreement against your right to receive money from us, unless prohibited by applicable law.

### 33. Change in Terms.
Generally, the terms of this Agreement cannot be changed. We may, however, make the following changes:

- Changes that you agree to in writing at the time of the change;
- Changes that will unequivocally benefit you;
- Insignificant changes; or

9527

- Change the index and margin if the original index becomes unavailable. Any new index will have a historical movement substantially similar to the original index, and together with the new margin, produce an APR substantially similar to the rate in effect at the time the original index became unavailable.

If we are required to send notice of a change in terms, we will send the notice to your address listed above.

**34. Applicable Law.**

This Agreement is governed by the laws of **FLORIDA**, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located.

**35. Use of Account.**

You promise to use advances under the Line of Credit for consumer (personal, family or household) purposes, unless we give you written permission to use the Account for agricultural or commercial purposes or to purchase real estate.

BY SIGNING BELOW, YOU AGREE TO THE TERMS OF THIS AGREEMENT. YOU ALSO ACKNOWLEDGE AND AGREE THAT YOU RECEIVED A COMPLETED COPY OF THIS AGREEMENT.

_____  12/28/2021
- BORROWER - STEPHEN T SKERTICH - DATE -

_____  12/28/2021
- BORROWER - CYNTHIA A SKERTICH - DATE -

# EXHIBIT 2

Inst. Number: 202241003012 Page 1 of 10 Date: 1/7/2022 Time: 10:20 AM
Angelina "Angel" Colonneso Clerk of Court of Manatee County Florida Doc Mort 1,750.00 Doc Deed 0.00
Case 2:24-cv-00809-PD   Document 18-5   Filed 07/26/24   Page 16 of 43

After Recording Return To:
**SPRING EQ, LLC**
**2929 ARCH STREET SUITE 500**
**PHILADELPHIA, PA 19104**
**215-391-1200**

Prepared By:
**BEE FANTY**
**SPRING EQ, LLC**
**2929 ARCH STREET SUITE 500**
**PHILADELPHIA, PA 19104**
**215-391-1200**

[Space Above This Line For Recording Data]

# MORTGAGE
## (Line of Credit)

SKERTICH
Loan #: █████9527
MIN: 101369830000095274
MERS Phone: 1-888-679-6377
PIN:

THIS MORTGAGE, dated **DECEMBER 28, 2021**, is between **STEPHEN T. SKERTICH AND CYNTHIA A. SKERTICH, HUSBAND AND WIFE** residing at **6911 DEVON COVE, LAKEWOOD RANCH, FL 34202 US**, the person or persons signing as "Mortgagor(s)" below and hereinafter referred to as "we" or "us" and "Mortgage Electronic Registration Systems, Inc." ("MERS") (solely as nominee for **SPRING EQ, LLC** (hereinafter "you" or "Lender") and Lender's successors and assigns)," with an address at P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS, referred to as the "Mortgagee".

Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Mortgage; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Premises; and to take any action required of Lender including, but not limited to, releasing or canceling this Mortgage.

MORTGAGED PREMISES: In consideration of the loan hereinafter described, we hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the premises located at: **6911 DEVON COVE, LAKEWOOD RANCH, MANATEE, FLORIDA 34202** (the "Premises") and further described as: **SEE ATTACHED LEGAL DESCRIPTION**

The Premises includes all buildings and other improvements now or in the future on the Premises and all rights and interests which derive from our ownership, use or possession of the Premises and all appurtenances thereto, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all streets, lanes, alleys, passages, and ways; all easements, rights of way, all liberties, privileges, tenements, hereditaments, and appurtenances thereunto belonging or anywise made appurtenant hereafter, and the reversions and remainders with respect thereto.

LOAN: The Mortgage will secure your loan in the principal amount of **$500,000.00** or so much thereof as may be advanced and readvanced from time to time to **STEPHEN T SKERTICH** and **CYNTHIA A SKERTICH**, the Borrower(s) under the Home Equity Line of Credit Agreement And Disclosure Statement

**HELOC - FL MORTGAGE with MERS**
1383.41                                    Page 1 of 6

9527

(the "Agreement") dated **DECEMBER 28, 2021**, plus interest and costs, late charges and all other charges related to the loan, all of which sums are repayable according to the Agreement, which has a maturity date of **DECEMBER 28, 2051**. This Mortgage will also secure the performance of all of the promises and agreements made by us and each Borrower and Co-Signer in the Agreement, all of our promises and agreements in this Mortgage, any extensions, renewals, amendments, supplements and other modifications of the Agreement, and any amounts advanced by you under the terms of the section of this Mortgage entitled "Our Authority To You." Loans under the Agreement may be made, repaid and remade from time to time in accordance with the terms of the Agreement and subject to the Credit Limit set forth in the Agreement.

OWNERSHIP: We are the sole owner(s) of the Premises. We have the legal right to mortgage the Premises to you.

MORTGAGOR'S IMPORTANT OBLIGATIONS:

(a) TAXES: We will pay all real estate taxes, assessments, water charges and sewer rents relating to the Premises when they become due. We will not claim any credit on, or make deduction from, the loan under the Agreement because we pay these taxes and charges. We will provide you with proof of payment upon request.

(b) MAINTENANCE: We will maintain the building(s) on the Premises in good condition. We will not make major changes in the building(s) except for normal repairs. We will not tear down any of the building(s) on the Premises without first getting your consent. We will not use the Premises illegally. If this Mortgage is on a unit in a condominium or a planned unit development, we shall perform all of our obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development and constituent documents.

(c) INSURANCE: We will keep the building(s) on the Premises insured at all times against loss by fire, flood and any other hazards you may specify. We may choose the insurance company, but our choice is subject to your reasonable approval. The policies must be for at least the amounts and the time periods that you specify. We will deliver to you upon your request the policies or other proof of the insurance. The policies must name you as "mortgagee" and "loss-payee" so that you will receive payment on all insurance claims, to the extent of your interest under this Mortgage, before we do. The insurance policies must also provide that you be given not less than 10 days prior written notice of any cancellation or reduction in coverage, for any reason. Upon request, we shall deliver the policies, certificates or other evidence of insurance to you. In the event of loss or damage to the Premises, we will immediately notify you in writing and file a proof of loss with the insurer. You may file a proof of loss on our behalf if we fail or refuse to do so. You may also sign our name to any check, draft or other order for the payment of insurance proceeds in the event of loss or damage to the Premises. If you receive payment of a claim, you will have the right to choose to use the money either to repair the Premises or to reduce the amount owing on the Agreement.

(d) CONDEMNATION: We assign to you the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Premises, or part thereof, or for conveyance in lieu of condemnation, all of which shall be paid to you, subject to the terms of any mortgages that have priority to this Mortgage.

(e) SECURITY INTEREST: We will join with you in signing and filing documents and, at our expense, in doing whatever you believe is necessary to perfect and continue the perfection of your lien and security interest in the Premises.

Inst. Number: 202241003012 Page 3 of 10 Date: 1/7/2022 Time: 10:20 AM

Angelina "Angel" Colonneso Clerk of Court Manatee County Florida Doc Mort: 1,750.00 Int Tax: 3,500.00 Doc Deed: 0.00

Case 2:24-cv-00809-JLB Document 18-5 Filed 06/26/25 Page 18 of 43

9527

(f) OUR AUTHORITY TO YOU: If we fail to perform our obligations under this Mortgage, you may, if you choose, perform our obligations and pay such costs and expenses. You will add the amounts you advance to the sums owing on the Agreement, on which you will charge interest at the interest rate set forth in the Agreement. If, for example, we fail to honor our promises to maintain insurance in effect, or to pay filing fees, taxes or the costs necessary to keep the Premises in good condition and repair or to perform any of our other agreements with you, you may, if you choose, advance any sums to satisfy any of our agreements with you and charge us interest on such advances at the interest rate set forth in the Agreement. This Mortgage secures all such advances. Your payments on our behalf will not cure our failure to perform our promises in this Mortgage. Any replacement insurance that you obtain to cover loss or damages to the Premises may be limited to the amount owing on the Agreement plus the amount of any mortgages that have priority to this Mortgage.

(g) HAZARDOUS SUBSTANCES: We shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Premises. We shall not do, nor allow anyone else to do, anything affecting the Premises that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Premises of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Premises. As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "Environmental Law" means federal laws and laws of the jurisdiction where the Premises are located that relate to health, safety or environmental protection.

(h) SALE OF PREMISES: We will not sell, transfer ownership of, mortgage or otherwise dispose of our interest in the Premises, in whole or in part, or permit any other lien or claim against the Premises without your prior written consent.

(i) INSPECTION: We will permit you to inspect the Premises at any reasonable time.

NO LOSS OF RIGHTS: The Agreement and this Mortgage may be negotiated or assigned by you without releasing us or the Premises. You may add or release any person or property obligated under the Agreement and this Mortgage without losing your rights in the Premises.

REMOVAL OF IMPROVEMENTS: We shall not demolish or remove any improvements from the Premises without your prior written consent. As a condition to the removal of any improvements, you may require us to make arrangements satisfactory to you to replace such improvements with improvements of at least equal value.

COMPLIANCE WITH GOVERNMENTAL REQUIREMENTS: We shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Premises. We may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as we have notified you in writing prior to doing so and so long as, in your sole opinion, your interests in the Premises are not jeopardized. You may require us to post adequate security or a surety bond, reasonably satisfactory to you, to protect your interest.

DUTY TO PROTECT: We agree to neither abandon nor leave unattended the Premises. We shall do all other

HELOC - FL MORTGAGE with MERS

1383.41            Page 3 of 6

Inst. Number: 202241003012 Page 4 of 10 Date: 1/7/2022 Time: 10:20 AM
Angelina "Angel" Colonneso Clerk of Court of Manatee County Florida Doc Mort 1,750.00 Doc Deed 0.00
Case 2:24-cv-00809-PD Document 18-5 Filed 06/26/25 Page 19 of 43

9527

acts set forth above in this section, which from the character and use of the Premises are reasonably necessary to protect and preserve the Premises.

COMPLIANCE WITH LAWS: We warrant that the Premises and our use of the Premises complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

SURVIVAL OF PROMISES: All promises, agreements and statements we have made in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature and shall remain in full force and effect until such time as the Agreement is paid in full.

DEFAULT: Except as may be prohibited by applicable law, and subject to any notice required by applicable law, if we default on any term in the Agreement and/or of any term of this Mortgage, you may, in accordance with applicable law, pursue and enforce any rights you have under applicable law, including, without limitation, the right to: (i) accelerate all amounts due under the Agreement; (ii) foreclose upon this Mortgage and sell the Premises, either in whole or in part or in separate parcels at different times, if necessary, until the indebtedness due under the Agreement is satisfied or the Premises is exhausted, whichever occurs first; (iii) enter on and take possession of the Premises; (iv) collect the rental payments, including over-due rental payments, directly from tenants, and you are appointed as our agent and attorney-in-fact to collect any such rents by any appropriate proceeding; (v) manage the Premises, including signing, canceling and changing leases; and (vi) seek appointment of a receiver for the Premises and we hereby appoint you as our attorney-in-fact with authority to consent for us to the appointment of a receiver. This means that, among other rights you may pursue and enforce, you may arrange for the Premises to be sold, as provided by law, in order to pay off what we owe under the Agreement and under this Mortgage. If the money you receive from the sale is not enough to pay off what we owe you, we will still owe you the difference which you may seek to collect from us in accordance with applicable law. We agree that the interest rate set forth in the Agreement will continue before and after a default, entry of a judgment and foreclosure. Subject to applicable law, if you acquire the Premises at a forced sale following our default, our right to any insurance proceeds resulting from damage to the Premises prior to the acquisition shall pass to you to the extent of the sums secured by this Mortgage immediately prior to acquisition. In addition, subject to applicable law, you shall be entitled to collect all reasonable fees and costs actually incurred by you or your agents arising out of or related to this Mortgage or the Agreement, including, but not limited to, reasonable attorneys' fees and costs of foreclosure, property preservation, documentary evidence, abstracts and title reports.

ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER: As additional security, we assign to you the rents of the Premises. You or a receiver appointed by the courts shall be entitled to enter upon, take possession of and manage the Premises and collect the rents of the Premises including those past due.

WAIVERS: To the extent permitted by applicable law, we waive and release any error or defects in proceedings to enforce this Mortgage and hereby waive the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale and homestead exemption.

BINDING EFFECT: Each of us shall be fully responsible for all of the promises and agreements in this Mortgage. Until the Agreement has been paid in full and your obligation to make further advances under the Agreement has been terminated, the provisions of this Mortgage will be binding on us, our legal representatives, our heirs and all future owners of the Premises. This Mortgage is for your benefit and for the benefit of anyone to whom you may assign it. Upon payment in full of all amounts owing to you under the Agreement and this Mortgage, and provided any obligation to make further advances under the Agreement has terminated, this Mortgage and your rights in the Premises shall end.

HELOC - FL MORTGAGE with MERS
1383.41                              Page 4 of 6

Inst. Number: 202241003012 Page 5 of 10 Date: 1/7/2022 Time: 10:20 AM
Angelina "Angel" Colonneso Clerk of Court of Manatee County, Florida Doc Mort 1,750.00 Int Tax 900.00 Doc Deed 0.00
Case 2:24-cv-00309-PD Document 18-5 Filed 06/26/25 Page 20 of 43

9527

NOTICE: Except for any notice required under applicable law to be given in another manner, (a) any notice to us provided for in this Mortgage shall be given by delivering it or by mailing such notice by regular first class mail addressed to us at the last address appearing in your records or at such other address as we may designate by notice to you as provided herein, and (b) any notice to you as provided herein shall be given by certified mail, return receipt requested, to your address at **SPRING EQ, LLC, 2929 ARCH STREET SUITE 500 SUITE 500, PHILADELPHIA, PA 19104** or to such other address as you may designate by notice to us. Any notice provided for in this Mortgage shall be deemed to have been given to us or you when given in the manner designated herein.

RELEASE: Upon payment of all sums secured by this Mortgage and provided your obligation to make further advances under the Agreement has terminated, you shall discharge this Mortgage without charge to us, except that we shall pay any fees for recording of a satisfaction of this Mortgage.

GENERAL: You can waive or delay enforcing any of your rights under this Mortgage without losing them. Any waiver by you of any provisions of this Mortgage will not be a waiver of that or any other provision on any other occasion.

RIDERS: The following Riders are to be executed by Borrower [check box as applicable]:

☐ 1-4 Family Rider      ☐ Condominium Rider      ☐ Second Home Rider
☒ Planned Unit Development Rider      ☐ Other(s) [specify]

THIS MORTGAGE has been signed by each of us under seal on the date first above written.

_Stephen F. Skertich_    12/28/2021
- MORTGAGOR - STEPHEN T SKERTICH - DATE -
POST OFFICE ADDRESS: 6911 DEVON COVE, LAKEWOOD RANCH, FL 34202 US

_Cynthia A. Skertich_    12/28/2021
- MORTGAGOR - CYNTHIA A SKERTICH - DATE -
POST OFFICE ADDRESS: 6911 DEVON COVE, LAKEWOOD RANCH, FL 34202 US

_____      _____
Witness      Witness

_____      _____
Print Name      Print Name

9527

STATE OF FLORIDA

COUNTY OF MANATEE

The foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization, this _28th day of December, 2021_, by STEPHEN T. SKERTICH AND CYNTHIA A. SKERTICH, HUSBAND AND WIFE, ~~who is personally known to me or~~ who has produced _FL Driver License_ as identification.

Notary Public _Ipek Muessemeyer_

My Commission Expires: 1/4/2025

IPEK MUESSEMEYER
Notary Public-State of Florida
Commission # HH 76900
My Commission Expires
January 04, 2025

**HELOC - FL MORTGAGE with MERS**
1383.41                    Page 6 of 6

Inst. Number: 202241003012 Page 7 of 10 Date: 1/7/2022 Time: 10:20 AM
Angelina "Angel" Colonneso Clerk of Court of Manatee County Florida Doc Mort 1,750.00 Int Tax 2,000.00 Doc Deed 0.00
Case 2:24-cv-00805-PD    Document 18-5    Filed 06/26/25    Page 22 of 43

# PLANNED UNIT DEVELOPMENT RIDER

SKERTICH
Loan #: ████9527
MIN: 101369830000095274

    THIS PLANNED UNIT DEVELOPMENT RIDER is made this **28TH** day of **DECEMBER, 2021**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Agreement to **SPRING EQ, LLC**, (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**6911 DEVON COVE, LAKEWOOD RANCH, FL 34202**
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in THE COVENANTS, CONDITIONS AND RESTRICTIONS FILED OF RECORD THAT AFFECT THE PROPERTY (the "Declaration"). The Property is a part of a planned unit development known as

**COUNTRY CLUB EAST AT LAKEWOOD RANCH**
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

    **PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

    **A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners

**MULTISTATE PUD RIDER**--Single Family--**HELOC**
☐☐ 20386.10                              **Form CUSTOM 1/19**    *(page 1 of 3 pages)*

Inst. Number: 202241003012 Page 8 of 10 Date: 1/7/2022 Time: 10:20 AM
Angelina "Angel" Colonneso Clerk of Court of Manatee County, Florida Doc Mort 1,750.00 Doc Doc/Deed 0.00

Case 2:24-cv-00805-JDP   Document 18-5   Filed 06/26/25   Page 23 of 43

▬▬▬9527

Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then Borrower's obligation under the INSURANCE Section to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to ensure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in the CONDEMNATION Section.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Agreement rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**MULTISTATE PUD RIDER--Single Family--HELOC**
▥ 20386.10                                    **Form CUSTOM 1/19**   *(page 2 of 3 pages)*

Inst. Number: 202241003012 Page 9 of 10 Date: 1/7/2022 Time: 10:20 AM
Angelina "Angel" Colonneso Clerk of Court of Manatee County Florida Doc Mort 1,750.00 Doc Deed 7,000.00 Doc Deed 0.00
Case 2:24-cv-00305-PD Document 18-5 Filed 06/26/25 Page 24 of 43

9527

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_Stephen T Skertich_  12/28/2021

- MORTGAGOR - STEPHEN T SKERTICH - DATE -
POST OFFICE ADDRESS: 6911 DEVON COVE, LAKEWOOD RANCH, FL 34202 US

_Cynthia A Skertich_  12/28/2021

- MORTGAGOR - CYNTHIA A SKERTICH - DATE -
POST OFFICE ADDRESS: 6911 DEVON COVE, LAKEWOOD RANCH, FL 34202 US

**MULTISTATE PUD RIDER--Single Family--HELOC**
⊠ 20386.10                                    **Form CUSTOM 1/19**   *(page 3 of 3 pages)*

**EXHIBIT "A"**

The following described land, situate, lying and being in Manatee County, State of Florida, to-wit:

Lot 91-R, Country Club East at Lakewood Ranch, Subphase YY, Devon Cove Replat, a subdivision, according to the plat thereof, as recorded in Plat Book 62, Page 26, of the Public Records of Manatee County, Florida.

Being that parcel of land conveyed to Stephen T. Skertich and Cynthia A. Skertich, husband and wife from SD CCE, LLC, a Florida limited liability company by that deed dated 08/09/2019 and recorded 08/16/2019 in Book 2797, Page 2152, Instrument 201941080930, of the Manatee County, FL public registry. According to the public records, there has been no conveyance of the land within a period of twenty-four months prior to the date of this report, except as follows: None

Parcel ID(s): 0586593159

# EXHIBIT 3

Specialized Loan Servicing LLC
6200 S Quebec St
Greenwood Village, CO 80111



Specialized Loan
## Servicing
Part of the Computershare Group

Stephen Skertich
Cynthia Skertich
6911 Devon Cove
Lakewood Ranch, FL 34202

# Hello and Welcome Back

Dear Stephen Skertich and Cynthia Skertich,

## Your account is now being serviced by Specialized Loan Servicing LLC ("SLS")

We want to take this opportunity to welcome you, and let you know that we'll be here to help you manage your account. In this pack you'll find important new information about your account and your rights as a homeowner. Please review it carefully.

### Why do I have a new mortgage servicing company?

Within the mortgage industry, loans are often transferred from the originator to a company like SLS that concentrates on processing payments, providing escrow administration and general activities associated with your mortgage loan.

### What do I need to do now?

**To view your new account, please register at https://sls.servicingloans.com/login to verify your details and to confirm or set up your payments.**

Make managing your account even easier! You can also enroll online for email alerts, view documents, make and manage payments, and select your communications preferences.

Remember, we are here to assist you through this process and address any of your concerns.

Thank you, and again, welcome to SLS. We're happy to have you with us.

**Your SLS Customer Service Team**



### Register your new account

**Scan the QR code** with your smartphone camera or visit https://qrco.de/sls-login

You'll need your new account number

████3348

**Property address**
6911 Devon Cove
Lakewood Ranch, FL 34202

**Original lender**
Spring EQ

**Account transfer start date**
01/27/2022

# How do I make payments?

If you've already made this month's payment to your prior loan servicer, your payment will be forwarded to us. Future payments should now be made to us. Here's some ways you can do that:



## AUTOMATED PAYMENTS (no SLS charge)

Easily set up free automatic payments (ACH) direct from your bank account. Payments can be set up on a weekly, biweekly, semi-monthly or monthly basis. You can also select a convenient payment date within your account grace period.

To set up your automatic payments go to SLS.net and log in or set up your online account. Select "Manage Payments" and follow the prompts to set up your ACH payments.

Here are some additional payment options if you prefer not to pay automatically through us:



### One-time online payment

To make a one-time payment, please log in to your account or register a new account by visiting SLS.net. You will need your E-mail, Loan Number or SSN and your property zip code.

Payments made during business hours are posted the same day and may also be withdrawn. Please note that debit cards and credit cards are not accepted.



### Bill Pay from your bank

Arrange with your bank to have payments mailed to us every month from your bank. If you wish to submit additional payments toward escrow or principal, please use our online services. Should the payment amount change, please note that you are responsible for ensuring that you modify the payment amount. Check with your bank for expected delivery and receipt time to avoid late fees. Please check with your bank for bill pay transaction fees.

To set up your bill pay please use the below address and your account number:

Specialized Loan Servicing
P.O. Box 60535
City of Industry, CA 91716-0535



### Pay by mail

Personal checks, cashier's checks and money orders may be mailed to the address below. To ensure prompt and accurate processing of your payment please include your SLS account number and your property address.

Make payable to:
Specialized Loan Servicing LLC
P.O. Box 60535
City of Industry, CA 91716-0535




### Pay by phone

Borrowers may use our automated telephone payment service or speak with one of our helpful Customer Care Associates.

Please have your bank account number and routing number available when you call. Convenience fees of $12.50 may be charged per agent transaction or $7.50 via our automated system.

Call: 1-800-315-4757

# Here's your official *Notice of Servicing Transfer*

Dear Stephen Skertich and Cynthia Skertich,

The servicing of your Mortgage Loan for the property address listed above has been transferred, effective January 27, 2022. This means that after this date, a new servicer will be collecting your Mortgage Loan payments from you. No other terms of your Note and Mortgage will change. Spring EQ will stop accepting payments received from you after January 26, 2022. Specialized Loan Servicing LLC ("SLS") will collect your payments going forward effective January 27, 2022.

**Please send all payments due on or after January 27, 2022 to the following address:**
**Specialized Loan Servicing LLC, P.O. Box 60535, City of Industry, CA 91716-0535**

If you have any questions for either your present servicer, Spring EQ or your new servicer, SLS about your Mortgage Loan or this transfer please contact us by using the information below:



**Previous servicer**

Spring EQ
Customer Service Department
2929 Arch Street
Philadelphia, PA 19104
888-978-9978

**End date:** 01/26/2022



**New servicer**

Specialized Loan Servicing LLC
Customer Care Department
6200 S Quebec St
Greenwood Village, CO 80111
800-315-4757

**Start date:** 01/27/2022

**Important note about insurance:** If you have mortgage life or disability insurance or any other type of optional insurance, the transfer of servicing rights may affect your insurance in the following way: SLS does not currently offer life insurance or disability insurance. If you were previously enrolled in this service, it will no longer be part of your monthly payment. You should contact your provider to arrange for direct payment or cancellation of these services.

**Notice:** Under Federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer on or before its due date may not be treated by the new servicer as late, and a late fee may not be imposed on you.

**For property insurance purposes, our Mortgagee Clause is:**
Specialized Loan Servicing LLC
**Its Assigns and/or Successors ATIMA**
P.O. Box 620188
Atlanta, GA 30362

**Notices of Error or Requests for Information (Including Qualified Written Requests) must be submitted in writing to:**
Specialized Loan Servicing LLC
P.O. Box 630147
Littleton, CO 80163-0147

PLEASE SEE IMPORTANT DISCLOSURES ON THE REVERSE

**Important Notices:**

---

**SPECIALIZED LOAN SERVICING LLC IS REQUIRED BY FEDERAL LAW TO ADVISE YOU THAT THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**BANKRUPTCY NOTICE -** If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: Please be advised that this notice is to inform you of the status of the mortgage secured by the subject property.  This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. If you received a discharge of the debt in bankruptcy, we are aware that you have no personal obligation to repay the debt. We retain the right to enforce the lien against the collateral property, which has not been discharged in your bankruptcy, if allowed by law and/or contract. If you have questions, please contact us at 1-800-306-6057.

**SUCCESSORS IN INTEREST -** If you are in receipt of this communication pursuant to your status as a successor in interest to the subject property; this notice does not make you liable for the mortgage debt. Unless you are personally liable for or have assumed the mortgage loan, you cannot be required to use your assets to pay the mortgage debt. The lender has a security interest in the property and a right to foreclose on the property, when permitted by law and authorized under the mortgage loan contract.

Rev. 8/2021

| **FACTS** | WHAT DOES SPECIALIZED LOAN SERVICING LLC ("SLS") DO WITH YOUR PERSONAL INFORMATION? |
|---|---|

| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
|---|---|

| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>•   Social Security Number and income<br>•   Account balances and transaction history<br>•   Credit scores and mortgage rates and payments |
|---|---|

| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons SLS chooses to share; and whether you can limit this sharing. |
|---|---|

| Reasons we can share your personal information | Does SLS share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes –<br>Such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| For our marketing purposes –<br>To offer our products and services to you | Yes | No |
| For joint marketing with other financial companies | Yes | No |
| For our affiliates' everyday business purposes –<br>Information about your transactions and experiences | Yes | No |
| For our affiliates' everyday business purposes –<br>Information about your creditworthiness | No | We don't share |
| For our affiliates to market to you | No | We don't share |
| For nonaffiliates to market to you | No | We don't share |

| **Questions?** | Call 1-800-315-4757, 6:00 a.m. - 6:00 p.m. MT, Monday – Friday, or go to www.sls.net |
|---|---|

**Continued on the Reverse Side**

**Page 2**

| Who we are | |
|---|---|
| Who is providing this notice? | Specialized Loan Servicing LLC |

| What we do | |
|---|---|
| How does SLS protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings.<br><br>We maintain strict physical, electronic and procedural safeguards to protect the information we collect. Access is restricted to individuals who need it to perform their work for us. |
| How does SLS collect my personal information? | We collect your personal information, for example, when you:<br>• **apply for a loan** or **provide account information**<br>• **pay us by check** or **give us your contact information**<br>• **give us your income information**<br><br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| Why can't I limit all sharing? | Federal law gives you the right to limit only:<br>• Sharing for affiliates' everyday business purposes – information about your creditworthiness;<br>• Affiliates from using your information to market to you;<br>• Sharing for nonaffiliates to market to you;<br><br>State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law. |
| What happens when I limit sharing for an account I hold jointly with someone else? | Your choices will apply to everyone on your account. |

| Definitions | |
|---|---|
| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>• *Our affiliates include companies with a Specialized or Computershare name, and financial companies such as CMC Funding, Inc. and Capital Markets Cooperative, LLC* |
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br>• *Specialized Loan Servicing LLC does not share with nonaffiliates so they can market to you.* |
| Joint Marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>• *Our joint marketing partners include mortgage banking, insurance, payment platform providers and other financial services companies* |

**Page 3**

## Other important information

**Special Notice Regarding Collected Information Subject to the Fair Debt Collection Practices Act.** This Privacy Notice is being sent to you in accordance with federal privacy law, and it describes our privacy practices generally. However, please be assured that collected information that is received or used for purposes of collecting a debt subject to the Fair Debt Collection Practice Act is communicated only in accordance with that Act.

**California Residents.** If you are a **resident of California**, you are permitted to limit our disclosure of your non public personal information to non-affiliated financial institutions with which we have a joint marketing agreement. You may request that we not share your non-public personal information with these third parties by (1) completing, signing and returning to us the attached form entitled "Important Privacy Choices for California Consumers" or (2) notifying us using one of the methods set forth in the "Important Privacy Choices for California Consumers." Except as set forth above, Specialized Loan Servicing LLC will not share our non-public personal information with other unaffiliated third parties.

**Residents of Vermont:**
- We will not disclose information about your creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health information to nonaffiliated third parties to market to you, other than as permitted by Vermont law, unless you authorize us to make those disclosures.
- Additional information concerning our privacy policies can be found at www.sls.net or call 1-800-315-4757.

**Additional Information for EU/EEA Residents:**
In addition to the information provided above, if you are a current resident of an EU/EEA country, you may have certain rights regarding your personal information. We will assist our data controller clients, to the extent possible, with the fulfillment of their obligations to respond to your requests. These may include, depending on the circumstance, the right to access your personal information; rectify the personal information we hold about you; erase your personal information restrict our use of your personal information; object to our use of your personal information; receive your personal information in a usable electronic format and transmit it to a third party (also known as the right of data portability); Lodge a complaint with your local data protection authority; and withdraw any consent you have given to the uses of your personal information. If you would like to discuss or exercise the right you may have, feel free to contact us.

# RESPA Notice

**PURSUANT TO RESPA, A NOTICE OF ERROR OR REQUEST FOR INFORMATION REGARDING THE SERVICING OF THE MORTGAGE ACCOUNT (INCLUDING A QUALIFIED WRITTEN REQUEST) MUST BE SENT TO THIS ADDRESS:**

**SLS**
**P.O. Box 630147**
**Littleton, CO 80163-0147**

Please note, RESPA (12 U.S.C. Section 2605) provides you certain consumer rights. If you send a notice of error or request for information (including a qualified written request) to your loan servicer regarding the servicing of your loan, your servicer must provide you with a written acknowledgment within 5 days (excluding legal public holidays, Saturdays, and Sundays) of receipt of your request.

Response Time Frame for Notice of Error:
Your loan servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute within the following time limits:

- Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors related to the failure to provide an accurate payoff balance.

- Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted related to dual tracking.

- For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

After receipt of a notice of error, your servicer may not, for 60 days, furnish adverse information to any consumer reporting agency regarding any payment that is the subject of the notice of error. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents, except with regard to notices from you related to initial foreclosure filings or motions for foreclosure judgments or sales.

Response Time Frame for Request for Information:
Your loan servicer must respond to your request for information within the following time limits:

- Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and

- For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

The notice of error or request for information must be written correspondence (other than notice on a payment coupon or other medium supplied by the servicer) that includes, or otherwise enables the servicer to identify, the name and account of the borrower, and includes a statement of the reasons the borrower believes the account is in error, if applicable, or that provides sufficient detail to the servicer regarding the information being sought by the borrower. Please note, a notice of error or request for information is not considered timely if the written correspondence is delivered to Specialized Loan Servicing LLC or the prior servicer who receives the request for information or notice of error more than 1 year after either the date of transfer of servicing or the date the mortgage servicing account was discharged (either paid in full, or discharged through foreclosure or deed in lieu of foreclosure or short sale without full satisfaction of the underlying contractual obligation).

# EXHIBIT 4



Specialized Loan
**Servicing**
Part of the Computershare Group

## HELOC WIRE REQUEST FORM

| | |
|---|---|
| **Date:** | |
| Borrower Name: Stephen Skertich<br><br>Cynthia Skertich | |
| Borrower Loan Number:<br><br>████3348 | |
| Borrower Address: 6911 Devon Cove<br><br>Lakewood Ranch, FL 34202 | |
| WIRE TRANSFER AMOUNT:<br>$425,650 | |
| **Receiving Bank Information** | |
| Bank Name:<br><br>CitiBank | |
| Bank Address: 225 W Virginia St<br><br>Crystal Lake, IL60014 | |
| Account Holder Name:<br><br>Stamp Stick And Pin | |
| Bank ABA/Routing Number (PLEASE CONTACT YOUR BANK TO CONFIRM):<br><br>████████ | |
| Bank Account Number:<br><br>███████ | |
| Payment Details<br>Property Investment | |

| **Borrower Signature** | **SLS Approval** |
|---|---|
| Print Name:<br><br>Stephen Skertich | Print Name: |
| Signature:<br>*Steph F Skertich* | Signature: |
| Notary Signature:<br>*signature* | Print Name: |
| Date:<br>06/05/2024 | Signature: |
| | **CONTROL: EO-404404-W** |

IPEK MUESSEMEYER
Notary Public-State of Florida
Commission # HH 76900
My Commission Expires
January 04, 2025

Ipek Muessemeyer
My Commission Expires: 1/4/2025

# EXHIBIT 5

Shellpoint Mortgage Servicing
P.O. Box 619063
Dallas TX 75261-9063
DO NOT SEND MAIL OR PAYMENTS TO THIS ADDRESS

0-811-04605-0011098-003-1-000-000-000-000

 

STEPHEN SKERTICH
CYNTHIA SKERTICH
6911 DEVON CV
LAKEWOOD RANCH FL  34202-1235

# shellpoint®

## MONTHLY BILLING STATEMENT

Statement Date:    07/09/2024

**Shellpoint Mortgage Servicing**
P.O. Box 10826 • Greenville, SC  29603
Customer Service: 800-365-7107

| Loan Number: | ████3348 |
|---|---|
| Billing Pmt Due Date: | 08/01/2024 |
| Payment Due: | **$1,264.70** |
| *If payment is received after 08/17/2024, $0.00 late fee may be assessed.* | |

| Phone | 800-365-7107 |
|---|---|
| Website | www.shellpointmtg.com |



STEPHEN SKERTICH
CYNTHIA SKERTICH
6911 DEVON COVE
LAKEWOOD RANCH FL  34202

| Previous Balance: | $████.00 |
|---|---|
| Payments/Credits (-): | $425,650.00 |
| Draws (+): | $0.00 |
| Finance Charges (+): | $4,047.92 |
| Overlimit Amount | |
| Unpaid Late Charges: | $0.00 |
| Unpaid NSF Fees: | $0.00 |
| Other Unpaid Fees/Charges: | $0.00 |
| Credit(s): | $0.00 |

| Property Address | 6911 DEVON COVE
LAKEWOOD RANCH, FL 34202 |
|---|---|

**PLAN BALANCES AND FINANCE CHARGES FROM 06/06/2024**

| APR | Average Daily Principal Balance | Daily Periodic Rate | Periodic Finance Charge | Number of Days in Billing Cycle |
|---|---|---|---|---|
| 10.87500% | $425,650.00 | 0.████ | $3,921.01 | 31 |

**ACCOUNT ACTIVITY**

| Date | Description | Principal Amount | Finance Amount | Escrow Amount | Other Fund | Reserve Amount | Late Charge | Transaction Amount |
|---|---|---|---|---|---|---|---|---|
| 06/07/2024 | Principal Only Payment | -$425,650.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | -$425,650.00 |
| 07/07/2024 | New Loan | $425,650.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

### Total Payment Amount Breakdown

| Description | Unpaid Balance |
|---|---|
| Payment Due 08/01/2024 | 1,264.70 |
| | **1,264.70** |

**CREDIT INFORMATION**

| Credit Limit: | $500,000.00 | Available Balance: | $74,350.00 | Principal Balance: | $425,650.00 |
|---|---|---|---|---|---|

**YEAR TO DATE INFORMATION**

| Escrow Balance: | $0.00 | Finance Charges Paid Year to Date: | $0.00 | Insurance Paid Year to Date: | $0.00 |
|---|---|---|---|---|---|
| Reserve Account Balance: | $0.00 | Taxes Paid Year to Date: | $0.00 | Late Charges Paid Year to Date: | $0.00 |
| Assistance Balance: | $0.00 | | | | |

## Important Messages

**Partial Payments:** Any Partial payments that you make are not applied to your mortgage, but instead are held in a separate account to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

## Additional Messages

Federal law requires us to tell you how we collect, share, and protect your personal information. Our Privacy Policy has not changed. You can review our policy and practices with respect to your personal information at www.shellpointmtg.com or request a copy to be mailed to you by calling us at 800-365-7107.

For questions regarding the servicing of your loan, please contact us at  800-365-7107 Monday - Friday  8:00AM-9:00PM ET, and Saturday 10:00AM-2:00PM ET.

**Please read the following important notices as they may affect your rights.**

Newrez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. Newrez LLC dba Shellpoint Mortgage Servicing's NMLS ID is 3013.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code.

**Attention Servicemembers and Dependents: The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service.  Counseling for covered servicemembers is available from Military OneSource (800-342-9647) and the United States Armed Forces Legal Assistance or other similar agencies. For more information, please visit the Military OneSource website www.militaryonesource.mil/.**

# MONTHLY BILLING STATEMENT

**Notice of Error or Information Request Address**

You have certain rights under Federal law related to resolving errors in the servicing of your loan and requesting information about your loan. If you want to request information about your loan or if you believe an error has occurred in the servicing of your loan and would like to submit an Error Resolution or Informational Request, please write to us. Additionally, if you believe we have furnished inaccurate information to credit reporting agencies, please write to us with specific details regarding those errors and any supporting documentation that you have and we will assist you. Error Resolution, including concerns of inaccurate information sent to credit reporting agencies, or requests for information should be sent to the following address:

Shellpoint Mortgage Servicing
P.O. Box 10826
Greenville, SC  29603

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

A successor in interest is someone who acquires an ownership interest in a property secured by a mortgage loan by transfer upon the death of a relative, as a result of a divorce or legal separation, through certain trusts, between spouses, from a parent to a child, or when a borrower who is a joint tenant or tenant by the entirety dies. If you are a successor in interest, or you think you might be, please contact by phone, mail or email to start the confirmation process.

**Our system of record has your preferred language as English.**

**If you prefer to receive communication in a language other than English, please contact us at 800-365-7107 to speak with a translator in your preferred language about the servicing of your loan or a document you received.**

**Si prefiere recibir las comunicaciones en otro idioma que no sea el inglés, por favor, contáctenos en el 800-365-7107 para hablar con un traductor en el idioma de su preferencia sobre la gestión de su préstamo o cualquier documento que haya recibido.**

Please note that we operate as Newrez Mortgage LLC dba Shellpoint Mortgage Servicing in Arkansas and Texas.

**Statement of Method of Computing Finance Charge and Applicable Balance**

§ The following items, among others, are shown on the face of this statement: Daily Periodic Rate and Annual Percentage Rate.
§ A Finance Charge on the average Daily Balance will accrue from the time a draw is posted to your account. The Finance Charge will continue to accure for the period.
§ The Finance Charge on your account for any billing cycle is computed by applying the Daily Periodic Rate to the Average Daily Balance of your account (including current transactions) multiplied by the number of days in the billing cycle. For Variable Rate Loans: Your daily periodic rate may vary.
§ Average Daily Balance Computation: Daily ending balance divided over the total number of days in the billing cycle results in the average daily balance.

If the New Balance set forth on the face of this statement is preceded by a minus sign, the New Balance refers to a credit balance.

**BILLING RIGHTS SUMMARY**

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL**

i. If you think your bill is wrong, or if you need more information about a transaction on your bill, write us a separate sheet at P .O. Box 10826 Greenville, SC  29603 as soon as possible. You may also contact us on the Web: www.shellpointmtg.com. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

ii. In your letter give us the following information:
§ Your name and account number.
§ The dollar amount of the suspected error.
§ Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

iii. You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question . While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

# *MONTHLY BILLING STATEMENT*



---

Detach Here

# shellpoint®

## PAYMENT COUPON

**Loan Number:** ████ **3348**

| | |
|---|---|
| **Payment Due Date:** | **08/01/2024** |
| **Payment Due:** | **$1,264.70** |

*$0.00 late fee may be charged after:08/17/2024*

Customer:   STEPHEN SKERTICH
CYNTHIA SKERTICH
6911 DEVON COVE
LAKEWOOD RANCH FL  34202

Extra Principal Paid:

Shellpoint Mortgage Servicing
P.O. Box 60535
City of Industry, CA  91716-0535

**Enter Total Amount Paid:**

3348